THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CURLISS DISMUKE, Defendant-Appellant.

(No. 70-17;

Second District—November 4, 1970.

Lucas T. Clarkston and Maurice Scott, Jr., of Chicago, and Anthony S. Ingrassia, of Rockford, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (Daniel D. Doyle, Assistant State's Attorney, of counsel,) for the People.

Mr. PRESIDING JUSTICE DAVIS delivered the opinion of the court:

The defendant, Curliss Dismuke, was indicted for the crime of rape, waived jury trial and was found guilty by the court. A motion for a new trial was denied, and he was sentenced to serve from ten to fifteen years in the penitentiary. This appeal followed.

The testimony of the complaining witness and her husband related to the following events: On the morning of May 10, 1969, at about 3:15 A.M., they were awakened by the bark of their dog. The husband looked up and saw a person advancing toward their bed, who asked for money. He was given two or three dollars, which the complaining witness took from her clothing. The husband was then led by the intruder to a bathroom where a light was burning, and was asked to, and did, turn off the light. The two then proceeded to the kitchen where a light was burning. The intruder asked the husband to turn off that light, and in so doing, the husband inadvertently switched on the overhead light in the kitchen. This light remained on about a half a minute after which time he turned it off at the intruder's command. During this time, the husband looked directly at the intruder.

The two men then proceeded back toward the bedroom. The intruder then asked the husband to turn on the bathroom light, which partially illuminated the bedroom. He did so, and thus got another view of the intruder, who then ordered the husband to get back into bed. The intruder then said that he thought he would kill the husband because he was a "cop." The complaining witness said "no," and became hysterical; the intruder told her to "shut up."

The complaining witness and her husband were then ordered to undress, which they did; they were then told to pull down the bed covers, which they did, and the intruder then told the husband to "eat her." Thereupon, the husband "more or less crawled on the bed." The intruder remarked, "You're not doing that right, get up and get back of

the bed." During this time the intruder was standing next to the bed and was closely watching the complaining witness and her husband. Before the husband could rise from the bed, the intruder remarked, "Would you go ahead and fuck her now." The husband stated that he couldn't, and the intruder then ordered him to get behind the bed, and pushed the bed up against him so that he could not move.

The intruder then proceeded to rape the complaining witness, all the while holding a gun close to her head. The husband was able to see what was happening in a bedroom mirror. The intruder then led the complaining witness, who was nude, from the bedroom and told the husband not to move or he would kill her. The intruder left the house with her and released her a short distance away. He then fled.

On May 31, after the defendant's arrest, the complaining witness and her husband were taken to view a police lineup. They both identified the defendant as the intruder, and later made in-court identifications of him.

The defendant testified, and denied that he was the intruder who broke into the home of the complaining witness and raped her. He stated that he was at home from 12:15 A.M. until 8:00 A.M. on the morning in question, and that his home was about one block from that of the complaining witness. His wife testified as an alibi witness on his behalf, and he offered credible witnesses as to his truth and veracity.

On this appeal the defendant contends: (1) that there was insufficient identification evidence to sustain a conviction; (2) that certain evidence regarding the identification of the defendant was improperly admitted; (3) that testimony regarding the defendant's ownership of the gun was improperly admitted; (4) that the trial judge unduly restricted the defendant's cross-examination of prosecution witnesses, and in so doing assumed the role of an advocate on behalf of the prosecution; and (5) that the defendant's reputation for truth and veracity, along with his alibi, was sufficient to raise a reasonable doubt as to his guilt.

■■ With reference to the first two of the defendant's contentions, he was identified by the complaining witness and her husband at the trial and at a police lineup on May 31, 1970. At the time of the lineup, which took place the day of his arrest and before his indictment, no attorney represented him. At the trial, the complaining witness and her husband testified relative to the lineup, and each of them then identified the defendant. The defendant here contends that the absence of counsel at the lineup, rendered inadmissible the testimony of the complaining witness and her husband regarding the lineup.

■■ This contention is without merit. A pre-indictment lineup has been held by our courts not to be such a critical stage of the proceedings as

to entitle the accused to the presence of a counsel. (*People v. Palmer* (1969), 41 Ill.2d 571, 572, 573, 574.) The testimony regarding this lineup is admissible unless the methods employed by the State were so flagrantly unfair as to deprive the defendant of due process of law. (*People v. Palmer, supra* 573.) No pretrial motions were made in this case concerning the lineup procedure, and the record does not indicate any conduct detrimental to the defendant in the conduct of the lineup.

■■ Further identification testimony was elicited by the prosecution and admitted over objection of the defense. This testimony concerned conversations, that the complaining witness and her husband had with a police artist, from which a sketch of the defendant was prepared. The sketch itself was clearly inadmissible, and the trial court properly sustained an objection to its introduction. (*People v. Turner* (1968), 91 Ill.App.2d 436, 444.) However, we do not believe that the testimony regarding the preparation of the drawing improperly influenced the court to accept the identification of the defendant by the complaining witness and her husband.

On the issue of the sufficiency of the identification, the defendant claims that the complaining witness and her husband had not given adequate details in their description of the intruder, and that the discrepancies in their descriptions were such that a reasonable doubt must remain.

■■ The husband of the complaining witness told the investigating police officers, shortly after the incident in question, that the intruder was a Negro, about nineteen or twenty years of age, slim build, 6'8" or 6'9" tall, and had a mustache. The defendant, at the time of the incident, was twenty-six years of age, 5'11" tall, and weighed 145 pounds. At the trial, on redirect examination, the husband of the complaining witness attempted to correct this statement by saying he meant the defendant was 5'8" or 5'9" tall, and had misspoken. Much is made, by the defense, of these discrepancies in the description. These matters go, generally, to the credibility of a witness and the weight to be given to his testimony; such questions are primarily for the trier of fact to decide. *People v. Setzke* (1961), 22 Ill.2d 582, 586.

The testimony at the trial indicated that both the complaining witness and her husband made a positive identification of the defendant at the police lineup. During this episode, the intruder was in their residence for a sufficient period of time, and under varying, but sufficient, conditions with reference to visibility, to make such identification possible.

■■■ At the time when the husband of the complaining witness and the intruder were in the kitchen, the two men were face to face while the overhead light was on, and when the husband turned the bathroom light

on, he further viewed the intruder. Identification evidence of this nature has been held sufficient to sustain a conviction even where, as in this case, the defendant has based his defense on an alibi, which was corroborated by witnesses, as to his whereabouts at the time of the offense. *People v. Setzke, supra* 586; *People v. Jackson* (1958), 95 Ill.App.2d 28, 32, 33.

Cases cited by the defendant, such as *People v. Cullotta* (1965), 32 Ill.2d 505; *People v. Kincy* (1966), 72 Ill.App.2d 419; and *People v. Marshall* (1966), 74 Ill.App.2d 483, differ from the case at bar in that either, as in *Cullotta*, the witness's identification was based on a fleeting glance, or as in *Kincy* and *Marshall*, the witness did not have a chance to, or failed to observe the face of the perpetrator of the offense. Thus, in those cases, the court held that the identification of the defendant was not positive since the witness was not able to remember details either as to facial features or the clothing worn by the alleged offender. In the light of the facts in the case at bar, we believe that the evidence as to the identity of the defendant was sufficient to sustain the conviction. *People v. Mack* (1962), 25 Ill.2d 416, 421; *People v. Nicholson* (1965), 55 Ill.App.2d 361, 367.

At the trial, both the complaining witness and her husband testified that the intruder threatened them with a pearl-handled gun. The husband testified that he believed the gun to be an automatic pistol. The State introduced evidence of a firearm's registration card, bearing the defendant's signature, showing that he had purchased a .25 caliber automatic pistol on February 10, 1967. The defendant, after being taken to police headquarters at the time of his arrest, denied owning a gun, but later admitted that he had purchased the .25 caliber automatic pistol, which he claimed he had subsequently loaned to his brother. The defendant, however, denied that the gun had a pearl handle, but he made no effort to produce it. He now claims that the evidence relative to the gun, the registration card, and the testimony of the police officer, were prejudicial in that this evidence did not relate to a pearl-handled gun, and the evidence as to any gun or guns other than that identified by the witnesses was improper.

■■ The husband of the complaining witness had identified the gun as an automatic, as opposed to a revolver. The evidence that the defendant had owned an automatic gun was material and proper for consideration. The defendant's testimony that he did not own a pearl-handled gun was uncorroborated, but his failure to produce the automatic was not substantial proof of the charge against him. However, if there was other relevant evidence against the defendant which indicated his guilt, and he failed to bring in evidence within his control to explain or refute

such evidence, his omission to do so was a circumstance which may be considered by the trier of fact. *People v. Williams* (1968), 40 Ill.2d 522, 529.

■■ Lastly, the defendant contends that the trial court committed reversible error in controlling the examination of the witnesses called by the State with reference to the identification of the defendant. We have examined the record, and note that the defense was permitted to cross-examine the prosecution witnesses very fully. The trial judge was the trier of fact and, as such, was permitted wide discretion in his direction of the conduct of the trial. *People v. Palmer* (1962), 26 Ill.2d 464, 470.

■■■ It is only where the trial judge materially prejudices the defense, by interjecting actions in the case, that we will reverse. *People v. Kalec* (1961), 22 Ill.2d 505, 512. It appears here that any comments or interjections made by the trial judge were made for the purposes of clarification and to enable the court to understand the issues, and to confine the scope of cross-examination within the permissible limits of the rules of evidence. The trial judge is permitted wider latitude in the conduct of a bench trial than in the conduct of a jury trial. In a bench trial, there is a presumption that the trial judge considered only competent evidence in reaching his decision. (*People v. Palmer* (1962), 26 Ill.2d 464, 470; *People v. Cox* (1961), 22 Ill.2d 534, 538.) We do not believe that the court abused its discretion in this case.

■■■ The trial judge heard all of the testimony, including that of the defendant relative to his reputation for truth and veracity, and his alibi. On the alibi issue, the trial court was under no obligation to believe the alibi testimony over the positive identification of the defendant by the complaining witness and her husband. (*People v. Setzke, supra* 586.) It was the function of the trial court to weigh the testimony and determine the credibility of the witnesses. The trial judge had the opportunity to observe the witnesses and hear their testimony, and in absence of strong evidence to the contrary, we will not substitute our evidentiary conclusions for those of the trial court. *People v. Mundorf* (1968), 97 Ill.App.2d 130, 136.

For the foregoing reason, the conviction of the defendant must be affirmed.

Judgment affirmed.

ABRAHAMSON and SEIDENFELD, JJ., concur.