(No. 35862.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RICHARD T. SETZKE, Plaintiff in Error.

*Opinion filed September 22, 1961.*

MELVIN L. GOLDMAN, of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and JOHN T. GALLAGHER and JAMES R. THOMPSON, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

By indictments in the criminal court of Cook County, Richard T. Setzke was charged with armed robbery and burglary. He was tried before the court without a jury, found guilty and sentenced to the penitentiary for concurrent terms of not less than one year nor more than five. He brings the record here for review by writ of error, contending that the evidence was insufficient and that he was unduly limited in his efforts to show the extent of the bitter feeling toward him on the part of the complaining witness.

The evidence on behalf of the prosecution showed that about 1:30 A.M. on December 21, 1957, one Michael Kowalski, a taxicab driver, was sitting in his taxi waiting for a fare at 47th Street and Ashland Avenue in Chicago when a man entered the cab and directed him to drive to 7135 South Hoyne. Upon arrival at that destination the passenger pointed a gun at Kowalski, ordered him into the rear seat and made him lie on the floor. His hands were then taped together. After taking Kowalski's blue jacket, which had been lying on the front seat, the man drove the cab away. After driving for some five minutes he stopped the car, left it for a short time, and then drove on for a few more blocks. He stopped a second time, whereupon he took Kowalski's wallet containing about $18 and again left the cab. This time he did not return. Kowalski broke loose, and found himself on Wood Street between 76th and 77th

Streets. He later identified the defendant, at a show-up and in the courtroom, as the man who had robbed him.

Defendant's father-in-law, William Santoli, is the complainant on the burglary charge. He resides at 2062 West 76th Street. About 2 o'clock the same morning he was awakened by a knocking at his door. From the window of his second floor bedroom he saw a taxicab out in front and a man on his doorstep wearing a blue coat or jacket. The man, who was holding something up to his face, said that somebody had called a cab. Santoli replied that no one there had called a cab, whereupon the man went back to the cab and left. Santoli testified that as the man turned to leave he got into the light of a street lamp, and that he recognized the man as the defendant.

Santoli further testified that about two hours later he was awakened again, this time by the noise of 'glass breaking. When he went downstairs he could see a light was on in the basement. Someone was pounding at the door which led from the basement to the kitchen, and Santoli went toward it to make sure it was locked. A number of shots were then fired through the door from the other side, whereupon Santoli retreated to a position behind the refrigerator. This was in a direct line with the door, a point from which Santoli, who had armed himself with a revolver, "would be ready" for the intruder. The door proved too much for the burglar, however, and he went back outside through the rear basement door. In the meantime Santoli had climbed upon a chair from which he could see through the window over the kitchen sink. From his vantage point he presently observed the intruder come out in a stooping position, and make a right angle turn. When he turned, the light from the basement window struck the side of his face and Santoli recognized him as the defendant. The defendant started running, and Santoli then fired shots at him. Later the police were called.

Evidence on behalf of defendant showed that he was

separated from his wife, and that her father, Santoli, exhibited a good deal of animosity toward him. Defendant resided with his parents and brother at 5011 South Damen Avenue in Chicago. He was employed by the Grand Trunk Western Railroad as a yard clerk, working from 3 to 11 o'clock P.M. His father was retired, having been employed by American Bank Note Company for some 37 years. His mother was employed by a chocolate company, her hours of work being from 3:30 P.M. to midnight. According to testimony by defendant and his parents, he arrived home from work around midnight on December 20, 1957. After eating his supper he joined his father, watching television. At 12:30 his aunt, who lived in the same building and also had a night job, stopped in after work and visited until 1:45. About one o'clock Lottie Schumacher, the girl friend of defendant's brother Ronald, telephoned to wish the family a Merry Christmas and was invited to come over. She arrived a half hour later. Defendant's father went to bed at 2:15 A.M. followed by Mrs. Setzke about fifteen minutes later. After the parents retired the defendant and Lottie Schumacher spent the next few hours decorating the Christmas tree and playing phonograph records. About 5:30 A.M. he took her home. As he was leaving he walked past his parents' door. His father heard him and asked him where he was going, to which he replied he was taking Lottie home. The testimony of defendant and his parents as to his presence at home from midnight until 5:30 A.M. on the morning in question was corroborated by the aunt, Mary Murzanski, who observed him there until she left about 1:45, and by Lottie Schumacher, who testified he was with her from 1:30 until 5:30. In addition, a friend of defendant named John Hawryszko testified that he talked to defendant by telephone at his home about 1:30 A.M. The defendant's brother, Ronald, who was also employed by the railroad, testified that he finished work about 5:30 or 5:40 on the morning in question, arrived home at 6 o'clock, and

then went on to Lottie Schumacher's house, where he saw defendant and the girl.

To reverse the conviction defendant first contends the evidence of identification is insufficient, in view of the larger number of witnesses testifying to his presence at home when the crimes were committed. He points to the absence of anything in the record to impugn the veracity of his witnesses, and he argues that under these circumstances he was not proved guilty beyond a reasonable doubt. We cannot accept the argument. The witnesses Kowalski and Santoli testified to having ample opportunity to observe the man who committed the respective crimes, and each was positive in identifying the defendant as that man.

Defendant attacks the reliability of the State's evidence on the ground that the description of the robber given by Kowalski shortly after the crime differs, with respect to height and other characteristics, from the actual appearance of defendant, and also that Santoli had previously threatened to have defendant locked up. The matters relied upon concern the credibility of the witnesses and the weight to be given their testimony. Such questions are primarily for the trier of fact to decide. This court cannot say on this record that the testimony of the State's witnesses is unworthy of belief, or that defendant's evidence required a finding of not guilty. There is no obligation on a trial court to believe alibi testimony over positive identification of the accused, even though the alibi testimony may be given by a greater number of witnesses. *People* v. *Lamphear,* 6 Ill.2d 346; *People* v. *Wheeler,* 5 Ill.2d 474.

Defendant also argues that the witness Santoli harbored a very strong feeling against defendant and that "the Court should have received and considered all the offered evidence on this subject in order to fully and properly evaluate Santoli's identification." We are afforded no reference to abstract or record, nor is any such "offered evidence" specified in the brief. Under such circumstances the contention

hardly deserves consideration. We have searched the record, however, and find nothing which supports the defendant's assertion.

Defendant has failed to show any error. The judgment of the criminal court is accordingly affirmed.

*Judgment affirmed.*