THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* SAUL R. COLBERT, Defendant-Appellant.

(No. 56091;

First District (3rd Division)—March 15, 1973.

Gerald W. Getty, Public Defender, of Chicago, (Harold A. Cowen and James J. Doherty, Assistant Public Defenders, of counsel,) for appellant.

Edward V. Hanrahan, State's Attorney, of Chicago, (Elmer C. Kissane and James R. Truschke, Assistant State's Attorneys, of counsel,) for the People.

Mr. PRESIDING JUSTICE DEMPSEY delivered the opinion of the court:

George Cermak, the proprietor of a meat market in Summit, Illinois, was robbed and shot to death as he left his shop at 6:30 P.M. on November 16, 1968. A day later his wallet was found on the median strip of the Stevenson Expressway. Near the wallet were some cards and papers which had dropped out of it. Among these was a slip of paper which did not belong to Cermak. This paper was turned over to the Summit police. It bore the name of a Mary Chester, a docket number of the Criminal Court of Cook County and the amount of a bond. The police reasoned that this piece of paper must have been commingled with those of Cermak by someone who had taken his wallet. Their investigation revealed that Mary Chester was in jail on a child abandonment charge

and that she and four men had been arrested a month before by the Chicago Police Department as suspects in a burglary case. Three of the men, Allen Nathaniel, Frank McDonald and the defendant, Saul Colbert, were known to the Summit police. The police also learned that Colbert had been seen in the vicinity of the murder and that Mary Chester was his girl friend.

The police proceeded to check the whereabouts of the men and an order was issued to bring them in for questioning. Nathaniel was the first one taken into custody. On the same day, two officers saw Colbert on a bus. He was taken off, informed that he was wanted for questioning in reference to a homicide and handcuffed for precautionary reasons. Nathaniel admitted being present at the slaying and implicated Colbert. Colbert was then placed under arrest and charged with the offense. He subsequently confessed and one of Cermak's employees identified him as a participant in the crime.

Colbert, Nathaniel, McDonald and a fourth man named Fields were indicted for the murder. Colbert waived a jury and was tried by the court. Nathaniel testified against him. He was found guilty and sentenced to the penitentiary for 40 to 80 years. On appeal he contends that the trial court erred in denying his pretrial motions to quash his arrest and to suppress his confession.

■■ An arrest by a police officer without a warrant is proper if the officer has reasonable grounds to believe that the person arrested has committed a criminal offense. (*People v. Wright* (1969), 42 Ill.2d 457, 248 N.E.2d 78; *People v. Scott* (1968), 100 Ill.App.2d 473, 241 N.E.2d 579.) The test is whether a reasonable and prudent man, having the knowledge which the officer had, would believe that a crime had been committed and that the person arrested was guilty of the offense. (*People v. Bambulas* (1969), 42 Ill.2d 412, 247 N.E.2d 873; *People v. Carroll* (1971), 133 Ill.App.2d 78, 272 N.E.2d 822.) The officer's belief may be founded on hearsay evidence and on factual and practical considerations of everyday life upon which reasonable and prudent men, not legal technicians, act. *People v. Denham* (1968), 41 Ill.2d 1, 241 N.E.2d 415.

■■ Probable cause for an arrest means something less than the evidence needed for a conviction. (*People v. Peak* (1963), 29 Ill.2d 343, 194 N.E.2d 322.) The question as to what information is sufficient to establish probable cause is dependent on the facts and circumstances of each particular case. (*People v. McCrimmon* (1967), 37 Ill.2d 40, 224 N.E.2d 822.) Cermak's wallet was removed from his person. A paper found near the discarded wallet bore the name of Mary Chester. A relative of Cermak's told the police that the paper was not his. It appeared highly probable that the paper had been placed in the wallet

by an individual involved in the theft and murder. Since Mary Chester and Colbert were close, friends and they had been arrested together on suspicion of burglary a month earlier, it was reasonable to assume that Colbert was that individual. Citizens informed the police that they had seen Colbert in the area of the murder. Under these circumstances the police had strong reason to believe that he participated in Cermak's murder and their order that he be brought into the Summit station for questioning—and the fulfillment of that order—was not an unreasonable act. A factor to be considered in judging the reasonableness of police conduct in making an arrest is their responsibility to catch criminals and prevent crime. (*People v. Asey* (1967), 85 Ill.App.2d 210, 229 N.E.2d 368.) There was probable cause for Colbert's arrest and the trial judge ruled correctly in denying his motion to quash.

■■ Inasmuch as we have determined that the arrest was valid, it is unnecessary for us to consider Colbert's contention that his confession should have been suppressed as the product of an illegal arrest. However, he also asserts that the confession was obtained through coercion. He testified that during his interrogation he was struck in the mouth by one officer and was threatened with a revolver and placed in fear of his life by another. He stated that an assistant State's Attorney told him he was "going to burn." Both the interrogating officers and the assistant State's Attorney to whom Colbert gave his incriminating statement denied the charges of brutality and coercion; they testified that Colbert was neither threatened nor physically abused. The trial judge found his confession to be voluntary. The credibility and weight to be given the testimony of witnesses is a matter to be determined by the trial judge and his determination will not be set aside unless it is obviously erroneous. (*People v. Noonan* (1972), 5 Ill.App.3d 1109, 284 N.E.2d 446.) The judge did not err in concluding that Colbert's confession was voluntarily made, and his motion to suppress was properly denied.

The judgment is affirmed.

Affirmed.

McNAMARA and McGLOON, JJ., concur.