THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ERNESTINE WILLIAMS, Defendant-Appellant.

(Nos. 57345, 57848 cons.;

First District (2nd Division)—December 11, 1973.

Sam Adam, Edward M. Genson, and Arnette R. Hubbard, all of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Kenneth L. Gillis and Ferdinand Minelli, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE LEIGHTON delivered the opinion of the court:

A one-count indictment charged the defendant, Ernestine Williams, with unlawful possession of heroin. She waived trial by jury, was convicted and sentenced to serve one to two years. Prior to her trial, defendant filed a motion to suppress evidence which she alleged was illegally seized at the time of her arrest.

## I.

In support of the motion, she called Robert Smith, a Chicago police officer who testified that at approximately 9:00 P.M. on March 25, 1971, he arrested defendant while she was walking south, near 1358 South Ashland Avenue, Chicago. Smith testified that he had neither a warrant for defendant's arrest nor one that authorized the search of her person. He conceded that before he arrested defendant, he did not see her violate any law. Nonetheless, he took defendant into custody, and she was transported to the 12th District Vice Office of the Chicago Police Department. Smith testified that in the police station, he searched her coat and found "* * * a quantity of white powder." At the end of his direct examination, Smith's police report of defendant's arrest was given to her counsel. Thereafter, Smith was cross-examined.

Smith was asked whether at about 5:30 P.M. on the 25th of March 1971 he received a telephone call at the 12th District Police Station in Chicago. He said he did; that he recognized the voice because for "* * * approximately a year, I would say," he had known the individual who called him; and that during the year, he had talked with this individual about ten times. On a number of occasions, "* * * I would say maybe ten or more," he had met this individual and had received information from him concerning narcotics, "I would say approximately four times." He acted on the information he received and recovered nar-

cotics in every instance. He made four arrests, two of which resulted in convictions "* * * and two pending that was approximately a year ago [*sic*]." In addition to matters concerning narcotics, this individual gave information about gambling which led to the recovery of a quantity of gambling slips "* * * a form of gambling that comes out in Puerto Rican papers every Wednesday, they take a collection, it is pretty hard to explain."

In answer to further questions, Smith testified that in the telephone conversation of March 25, the individual who called told him that he and several addicts were waiting for defendant to come with some heroin to the poolroom of a tavern at 1358 South Ashland Avenue; and that defendant arrived at the tavern every night, at approximately 6:00 P.M. The individual said that defendant "* * * was on her way"; and that on the 24th of March, the evening before, at approximately 8:00 P.M., he (the individual) had purchased three capsules of heroin from defendant for $9. Based on this information, Smith said he and his fellow officers proceeded directly to the location described to him. He knew the defendant "* * * from prior arrests." When he was asked the number of prior arrests through which he knew defendant, Smith replied, "One arrest." Then, he was subjected to redirect examination by defendant's counsel.

Smith was asked if he could name the two persons whose narcotics convictions resulted from information given him by the individual who called him the evening of March 25, 1971. He answered, "I don't recall the names right now." He was asked if he could name the two whose cases he said were pending on March 25, 1971. He answered, "I don't recall." When he was asked if he could name the person who was arrested on the gambling charge, he gave a phonetic spelling, saying, "I could be wrong on the spelling." As to when the arrest took place, Smith responded, "I don't recall the time." When asked how long before the 25th of March, 1971 the arrest had been made, his response was, "I don't recall at this time." Smith was dismissed. No other witness was called; no other evidence was introduced. The trial court denied the motion to suppress.

From these facts, defendant presents two issues. (1.) Whether the trial court erred in denying defendant's motion to suppress evidence. (2.) Whether the sentence imposed by the trial court is excessive.

## II.

■■ In a proceeding to suppress evidence, the burden of proving that the search and seizure were unlawful is on the defendant. (Ill. Rev. Stat. 1969, ch. 38, par. 114—12(b).) However, the burden of proving

the validity of an arrest is shifted to the State when a defendant shows he was doing nothing unusual at the time of his arrest, and he makes a prima facie case that the police lacked probable cause to arrest him. In such event, the burden of going forward with evidence to negate lack of probable cause shifts to the State. *People v. Moncrief*, 131 Ill.App.2d 770, 268 N.E.2d 717.

In this case, defendant called as her witness Robert Smith, the officer who arrested her. She proved by his testimony that she was doing nothing unusual, nor was she violating any law when he arrested her. Thus, she made a prima facie case that the officer lacked probable cause to make the arrest. (*People v. King*, 12 Ill.App.3d 355, 298 N.E.2d 715.) Therefore, the burden of going forward with evidence shifted to the State. (*People v. Cassell*, 101 Ill.App.2d 279, 243 N.E.2d 363.) However, the State did not call a witness, or introduce any evidence, but cross-examined Smith in order to prove that, in fact, there was probable cause for defendant's arrest. Smith proceeded to testify to information which he purportedly received from an informer, and to the reliability of the informer. Smith testified that he arrested defendant because an un-identified individual called about 5:30 P.M. on the 25th of March, 1971, and told him that defendant was expected in a tavern on South Ashland Avenue with heroin. The reliability of this informer was based on Smith's statement that on four occasions narcotics information from the individual had produced four arrests that resulted in two convictions and two pending cases. In addition, Smith said that this individual had furnished him information that led to a gambling raid.

Smith's testimony was weakened by the fact that he arrested defendant at approximately 9:00 P.M., not 6:00 P.M., the hour allegedly given him by the informer as defendant's arrival time at the tavern. Moreover, the written report he made of defendant's arrest contained a narrative, apparently in his handwriting, that differed from his testimony. It stated that defendant was arrested in a narcotic raid in front of 1358 South Ashland Avenue (Smith had testified that he arrested defendant as she was walking south on Ashland Avenue). The report stated that defendant was found in possession of a brown bottle containing seventy-five pink capsules of white powder (Smith had testified that in the police station he found a quantity of white powder in defendant's coat pocket). Although Smith testified that he arrested defendant on reliable information, he could not recall the names of the persons who had been convicted nor of the two whose cases he said were pending on March 25, 1971. There was inconsistency in Smith's testimony concerning the period of time he had known the allegedly reliable informer and the period of time within which he obtained information from him. Al-

though he had two partners with whom he worked in narcotics cases, he alone claimed to know the identity of the informer. Three other policemen, according to Smith, were involved in defendant's arrest; yet, his cross-examination testimony is the State's only evidence in support of the claim that a reliable informer's tip was the ground for defendant's arrest.

■■ In the hearing of a motion to suppress evidence, the State must show the grounds for the arresting officer's belief, including facts relating to the credibility of an informer, where information from an informer is the basis of that belief. (*Aguilar v. Texas*, 378 U.S. 108, 12 L.Ed.2d 723, 84 S.Ct. 1509; *People v. McCray*, 33 Ill.2d 66, 210 N.E.2d 161.) Probable cause for an arrest may be based on information from an informer, if reliability of that informer has been previously established (*People v. Durr*, 28 Ill.2d 308, 192 N.E.2d 379); or has been independently corroborated, *People v. McFadden*, 32 Ill.2d 101, 203 N.E.2d 888.

■■ It is our judgment that Smith's cross-examination testimony did not discharge the State's burden of proof concerning the informer. In fact, Smith's testimony was inconsistent and uncertain; it demonstrated a woeful lack of proof, not only as to the alleged informer's reliability but even as to his existence. From a leading case, we are reminded of the statement made by our Supreme Court that an "* * * informer's past reliability should not be left to inference, when it is such an easy matter to show the accuracy of the previous tips." *People v. McClellan*, 34 Ill.2d 572, 574, 218 N.E.2d 97.

■■ For these reasons, we conclude that the trial court erred in denying defendant's motion to suppress the evidence she alleged was illegally seized at the time of her arrest. (*People v. Mason*, 1 Ill.App.3d 302, 274 N.E.2d 216; compare *People v. Young*, 4 Ill.App.3d 602, 279 N.E.2d 392.) Having reached this conclusion, we will not decide whether the sentence imposed by the trial court is excessive. The judgment is reversed and the cause is remanded with directions that the trial court enter an order sustaining defendant's motion to suppress; and for further proceedings, not inconsistent with the views expressed in this opinion.

Reversed and remanded with directions.

STAMOS, P. J., and HAYES, J., concur.