THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD DeMORROW, Defendant-Appellant.

(No. 12128;

Fourth District—March 7, 1974.

Paul Bradley, Deputy Defender, of Chicago (Robert E. Davison, Assistant Appellate Defender, and Randolph A. Meyer, Senior Law Student, of counsel), for appellant.

Richard J. Doyle, State's Attorney, of Danville (John R. McClory, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

The defendant who was charged with aggravated kidnapping, unlawful restraint, rape, and indecent liberties with a child, appeals from his conviction of aggravated kidnapping and unlawful restraint and from the

sentence of 10 to 25 years imposed on the aggravated kidnapping conviction. The defendant was found guilty of those two charges by a jury verdict, the trial court having directed verdicts for the defendant on the charges of rape and indecent liberties with a child because venue had not been established in Vermilion County.

At approximately 8 P.M. on August 1, 1971, the complaining witness, 12-year-old Cindy Drollinger, and a companion, Jackie Morris, were walking to the Drollinger home in Hoopeston, Illinois, when two men driving a red 1964 Chevrolet called to the girls, asking how to get out of Hoopeston. Both girls approached the car; Jackie Morris gave directions, and then the driver asked whether the back tire was flat. The driver then got out of the car and seized both girls. He succeeded in forcing Cindy into the car, but Jackie Morris escaped and ran into the Drollinger home. The two men then drove the victim out of town and sexually assaulted her. Jackie Morris notified Cindy's father of the incident, describing the automobile, and Mr. Drollinger in turn reported the incident and the description of the automobile to the police.

At approximately 9:15 P.M., the defendant and co-defendant James Brandys were stopped by the police in Milford, Illinois about eleven miles north of Hoopeston, driving a red 1964 Chevrolet bearing 1971 Michigan license plates. The defendants told the Milford police they were unfamiliar with the area, but they had not been in Hoopeston other than at the junction of the east and north highways there. While the defendants were stopped, Mr. Drollinger and a companion, Jerry Yonkers, who were searching for Cindy and a red 1964 Chevrolet, arrived on the scene. Mr. Drollinger talked to the defendants, both of whom denied seeing his daughter, and both Drollinger and Yonkers noticed several large damp spots in the middle of the back seat of the automobile. Defendants opened the trunk at the request of Drollinger which disclosed nothing and after determining that the automobile was not stolen, the Milford police permitted the defendants to continue on their way. At about 11:45 P.M. on the same night, Cindy was brought to her home by a man who lived in the vicinity where the abductors had put her out of their car after the assault.

On August 4, 1971, Officer Mannin of the Hoopeston Police Department accompanied Cindy Drollinger, Jackie Morris, and their parents to Three Oaks, Michigan, where both the defendants resided, to determine whether the girls could identify the defendants and the automobile used in the abduction. Both girls were able to unequivocally identify defendant Brandys' 1964 Chevrolet as the car driven by the men in Hoopeston, and Mr. Drollinger positively identified the car, the back seat of which had stains, as the car he had seen stopped in Milford on

the evening of the offense. Officer Mannin, accompanied by Michigan State Trooper DenHouten, proceeded to the defendant DeMorrow's home. Another occupant of the residence, Miss Koch, at first told the policemen that the defendant was not at home and that they could not enter if they did not have a warrant. Officer Mannin and Trooper Den-Houten searched the grounds and upon going back to the front of the house after observing a rear bedroom window open, they entered the house and found the defendant in a rear bedroom. The defendant was placed under arrest; both officers testified that they gave him his *Miranda* warnings and the defendant was then handcuffed. Trooper DenHouten testified that when he asked the defendant if he knew what they were there for that defendant replied, "I think it involves the two girls down in Illinois."

Cindy Drollinger had stated that the larger of her assailants was wearing a yellow shirt and a blue vest. When asked about the clothing that he had worn on the preceding weekend, the defendant indicated the clothes hamper from which officer Mannin obtained two yellow shirts. When asked if he owned a vest as described by Cindy, the defendant stated that he did not. Officer Mannin testified that he then asked defendant whether he could look through the house for the vest and defendant agreed, saying he had nothing to hide. Officer Mannin found a blue overall-type vest in the closet of the rear bedroom and when confronted with it, defendant said that it was not his but Miss Koch's.

A lineup was held in Michigan but Cindy Drollinger was unable to make any statement whatsoever. Officer Mannin testified that "She couldn't talk. She was crying, all she could do was shake her head and tremble and cry."

Both defendant DeMorrow and co-defendant Brandys testified that on the weekend in question they had gone to Waverly, Indiana, to visit Brandys' uncle. Upon preparing to return to Michigan on August 1, the defendants were advised by the uncle that Danville, Illinois would be the closest place to procure beer since Indiana was dry on Sunday. Defendants stated that they drove to Danville where they purchased beer and gas, then proceeded on Route 1 in Illinois, at one point detouring on a country road to avoid being seen drinking the beer and to relieve themselves. They testified that they did not leave Route 1 at Hoopeston, Illinois, but rather they proceeded on north to Milford, Illinois, where they were stopped by the police and where they conversed with Mr. Drollinger. Defendant testified that when he was arrested at his home in Michigan, he knew about the incident from the officer who had stopped them in Milford, and from the defendant Brandys' wife who told him why the police were looking for him. The defendant stated

that he was wearing an orange shirt on August 1 and that he had never worn a blue denim vest nor did he own one.

Prior to the trial, a hearing was had on a motion to suppress—both defendants seeking the suppression of the evidence obtained from Brandys' car and defendant DeMorrow further seeking the suppression of the clothing taken from his house, alleging that he never consented to the search which was conducted without a warrant following his arrest. Both Trooper DenHouten and Officer Mannin testified that when asked about the clothing he had worn over the weekend the defendant indicated the two shirts were in the clothes hamper and consented to the search which revealed the vest. In an order including an extensive discussion of the facts and case law on the matter, the trial court denied the motion to suppress.

At the trial, both Cindy Drollinger and Jackie Morris identified both defendants. The girls, as well as Mr. Drollinger and the Milford police officer, identified photographs of the 1964 Chevrolet belonging to defendant Brandys as the one observed in Illinois on the day of the offense.

Following a jury verdict of guilty on the charges of aggravated kidnapping and unlawful restraint, convictions were entered on those offenses. A hearing was had on the application for probation of the defendant DeMorrow and probation was denied.

A hearing on aggravation and mitigation was held which revealed that the defendant was on parole in Michigan at the time of the offenses. Defendant was sentenced to 10 to 25 years.

The defendant raises three issues on appeal: (1) whether the shirt and vest found in his home should be suppressed as products of an unlawful search and seizure; (2) whether the defendant was proven guilty beyond a reasonable doubt, due to the complaining witness's inability to identify him at a lineup three days after the offense; and (3) whether the sentence imposed is excessive.

■■ In 1961, the United States Supreme Court held that all evidence obtained by search and seizures in violation of the United States Constitution was inadmissible in State courts. (*Mapp v. Ohio*, 367 U.S. 643, 6 L.Ed.2d 1081, 81 S.Ct. 1684.) Illinois had adopted a similar exclusionary rule regarding evidence obtained in violation of the Federal or Illinois constitutions. However, consent to what might otherwise constitute an unreasonable search is a waiver of the constitutional right so long as the consent is truly voluntary. (*Zap v. United States*, 328 U.S. 624, 90 L.Ed. 1477, 66 S.Ct. 1277.) The defendant denies that he told the officers to go ahead and search and contends that his acquiescence could not constitute a voluntary consent where the officers had entered his home without either an arrest warrant or a search warrant, arrested him,

placed him in handcuffs, and then asked him about the clothing in a manner which to him indicated that they were going to search regardless of anything he might say or do. The question of whether consent has been given is a factual matter to be determined by the trial court and where the evidence on the issue is in conflict, the reviewing courts will accept the finding below unless it is clearly unreasonable. (*People v. Peterson*, 17 Ill.2d 513, 162 N.E.2d 380.) A further contention made by the defendant with respect to consenting to a search is that it is a waiver of a fundamental constitutional right and as a part of its burden of showing a voluntary consent the State should establish that the defendant knew he had a right to refuse consent.

A recent Supreme Court case on this issue, *Schneckloth v. Bustamonte*, 412 U.S. 218, 36 L.Ed.2d 854, 93 S.Ct. 2041, establishes that a warning of the right to refuse consent to a search is not required by the fourth amendment. In *Schneckloth*, the Ninth Circuit Court of Appeals had said that consent cannot be found solely from the absence of coercion and the presence of a verbal expression of assent, but rather it must be shown that the defendant knew he could withhold consent and that the State must show not only that the consent was uncoerced but was given with an understanding that it could be freely and effectively withheld before there is a valid waiver of the fourth amendment rights. The Supreme Court noted that one of the few specifically established exceptions to the rule that a search conducted without a warrant is per se unreasonable is when consent has been given. The Court said that the question of whether the consent to a search was in fact "voluntary", or was the product of duress or coercion, whether express or implied, is a question of fact to be determined from the totality of all the circumstances; and while knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as a prerequisite for an effective consent. The Court commented that it would be an unreasonable burden to put on the State to establish the defendant understood he had a right to refuse to consent to a search and directly rejected the proposition that advising a defendant of the right to refuse should be required.

In *Schneckloth*, the police officer had asked the defendant if he could search the car after stopping the car in which the defendant and his companions were riding, but *before* anyone was threatened with arrest; while in the instant case, the conversation about the clothing and the search occurred *after* the arrest. The concluding paragraph of *Schneckloth* states:

> "Our decision today is a narrow one. We hold only that when the subject of a search is not in custody and the State attempts

to justify a search on the basis of his consent, * * * it [must] demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent." 412 U.S. at 248, 36 L.Ed.2d at 875, 93 S.Ct. at 2059.

■■ The Illinois rule is clearly in accord—a valid consent may be given even though it does not appear that the defendant was advised of his rights secured by the fourth amendment. (*People v. Brooks*, 51 Ill.2d 156, 281 N.E.2d 326.) The Illinois Supreme Court has said that in Illinois the prosecution is not required to show that the consenting party was advised of his rights secured by the fourth amendment, but the failure to do so is a factor bearing on the understanding nature of the consent. *People v. Ledferd*, 38 Ill.2d 607, 232 N.E.2d 684.

■■ Aside from the matter of warnings, there are high standards for voluntariness which must be met because courts indulge in every reasonable presumption against the waiver of fundamental constitutional rights. (*Johnson v. Zerbst*, 304 U.S. 458, 82 L.Ed. 1461, 58 S.Ct. 1019.) In a case where the alleged consent was found to be invalid, it was said that consent must be proved by clear and positive testimony and it must be established that there was no duress or coercion either actual or implied. (*People v. Haskell*, 41 Ill.2d 25, 241 N.E.2d 430.) Warning or lack thereof, whether the search precedes or follows arrest, and all circumstances of the search should be considered. Here the police had come into defendant's home without any kind of warrant, arrested, and handcuffed him before the search, all of which are circumstances adverse to free and voluntary decision-making by the defendant and which have been found to render the consent merely concession to overwhelming police authority.

■■ In *People v. Donel*, 44 Ill.2d 280, 255 N.E.2d 454, a warrantless search produced a stolen car, evidence of which was admitted into trial on the ground that the defendant voluntarily consented to the search of his garage. The case was distinguished from *Haskell* on the ground that the record did not indicate the defendant, who was familiar with criminal procedure, was frightened, confused, or merely submitting to the presence of authority. That court said the determination of whether consent, which operates as a waiver of the constitutional right against unreasonable searches, has been given, lies initially with the trial court. If a ruling of the trial court on voluntariness of consent is not clearly

unreasonable and is amply supported by the evidence, it will not be disturbed—it being largely a question of credibility. *People v. Hampton*, 5 Ill.App.3d 220, 282 N.E.2d 469.

Even if a specific warning of the right to refuse consent is not required by the United States Constitution or by Illinois, the defendant argues that it is required in Michigan where he lived and the search was conducted, and that therefore Illinois should respect that rule and suppress the evidence. The Michigan Supreme Court in a lengthy opinion traced the United States Supreme Court case law on fourth amendment freedom from unreasonable search and seizures and the exception made to the warrant requirement if there is a voluntary consent in *People v. Zeigler*, 358 Mich. 355, 100 N.W.2d 456. That court then drew a parallel between the fifth amendment, which protects defendants from being forced to be a witness against themselves, and the fourth amendment protection against unreasonable search and seizures having the same dual goals of protecting privacy and guarding against the compulsory production of evidence to be used against an accused resulting in the prosecutions being required to show a waiver of either those fourth or fifth amendments rights is voluntary, concluding that just as certain warnings of the fifth amendment rights are required to establish such waiver voluntary, so should warnings of fourth amendment rights be given before evidence obtained in a warrantless search allegedly made by consent can be admitted. That is, the Michigan court said that both the fourth and fifth amendments involve the protection of privacy and guard against the compulsory production of incriminating evidence so to assure a waiver of such fundamental constitutional rights is voluntary, a warning of the protection provided and the right not to waive it is required.

In *People v. Satken*, 49 Ill.2d 504, 275 N.E.2d 381, the crime was committed in Illinois by an Illinois citizen. The search warrant was obtained in Indiana to search the defendant's property in that state with issuance based on information given to the affiant-officer by the defendant's son who was a co-defendant. The defendant objected to the introduction of the fruits of that search at his trial in Illinois on the grounds that the Indiana rule is that an affidavit based on hearsay information and conclusions of the affiant is insufficient to show probable cause and will not support the issuance of a search warrant. As in the instant case, that foreign state's position is contrary to the rule in Illinois and not required by the United States Supreme Court opinions. (*Jones v. United States*, 362 U.S. 257, 4 L.Ed.2d 697, 80 S.Ct. 725, held that hearsay may support the issuance of search warrant under appropriate circumstances.)

The Illinois Supreme Court noted that traditional conflict of law

principles prescribe that issues of clearly procedural nature are governed by the internal laws of the forum whereas substantive matters are controlled by the law of the state where the transaction occurred. The supreme court went on to note that that traditional rule is gradually giving way to the "significant relationship" test as in *Graham v. General U.S. Grant Post* No. 2665, 43 Ill.2d 1. The court said that if the traditional procedural-substantive test were used, the admission of the fruits of the search would have been proper since evidentiary questions are procedural, and by the alternative rule the same result would be reached since Illinois had the most significant relationship—the crime was committed in Illinois, the defendant and most of the witnesses were citizens of Illinois, the offense was being prosecuted in Illinois, and Indiana had no vital contact with the crime. Therefore, if the search did not violate the fourth amendment, the fruits were admissible in Illinois regardless of the Indiana rule and the court then proceeded to determine whether the evidence was admissible under Illinois standards, concluding that it was.

■■■ The purposes behind the exclusionary rule in this type of situation where consent is in doubt, rather than the police blatantly violating the law in making the search, would seem to be to encourage police to respect the fourth amendment rights of individuals by denying the use of the fruits of search and seizures which exceded those bounds in subsequent prosecutions. Neither comity or any rule of law requires Illinois to be involved with this coercive supervision of the Michigan police officers, and neither is Illinois required to encourage Illinois policemen to follow the procedures of other states so long as they have not violated the United States Constitution and the evidence is admissible in Illinois. In the instant case, it is not as though a substantive right of the defendant established by substantive law in Michigan had been violated by the police—but rather a search was conducted under circumstances whereby if the prosecution attempted to introduce the fruits in a Michigan court against the defendant, the state would have had to establish a knowing consent and warning of the right to refuse it. The issue of admissibility of the fruits is a procedural-evidentiary question controlled by the forum-state rule, which is Illinois'. In addition, Illinois has the most significant contacts with the offense, the victim, the police officer, and the prosecution of the case, and so by that test as well, Illinois is not required to honor the Michigan standards on consent to the search and seizure.

The next issue raised by the defendant is whether he was proved guilty beyond a reasonable doubt, mainly based on the failure of the prosecuting witness to identify him at the lineup at Michigan. The defendant

cites *People v. Gardner,* 35 Ill.2d 564, 221 N.E.2d 232, where a rape conviction was reversed on the grounds that the defendant's guilt was not proved beyond a reasonable doubt in that the victim's identification was the only evidence except for the defendant's proximity to the victim's apartment when arrested, with such identification being weakened by a failure to hold a lineup and by inconsistencies between the victim's description of the assailant after the arrest and that contained in her testimony at trial. Whereas in *Gardner,* except for his proximity to the victim's home, the only evidence connecting the defendant to the crime was the identification testimony of the victim, in the instant case, it has been established beyond any doubt that the defendant and the car had traveled from Michigan to the immediate area in Illinois where the offense was committed by proof in addition to and completely independent of the victim's testimony. Whereas in *Gardner,* the court commented that the defendant's alibi was "strong and unimpeached" while the identification testimony was inconsistent, so that the basic conflict was said to be between the strength of the identification testimony and the strength of the defendant's strong and believable alibi, in the instant case, the defendants admit being in the area, providing no alibi other than a denial of committing the offense.

Although Cindy Drollinger did not identify defendant at the lineup in Michigan, the testimony indicates that she did not identify anyone else or state that her attacker was not there, but rather she was simply unable to participate at all. Her verbal description remained consistent and she unequivocally identified the defendant at the trial as did her companion Jackie Morris.

■■■ Identification and whereabouts of the defendant at the time of a crime are questions for the jury, although, where from the entire record there is a reasonable doubt as to the guilt of the defendant, a judgment of conviction will not stand. (*People v. Ricili,* 400 Ill. 309, 79 N.E. 509.) The decision of the trier of fact, when based on credible and substantial evidence, will not be set aside on review unless the evidence is so unsatisfactory as to raise a doubt as to defendant's guilt, because it is neither the duty nor the privilege of a reviewing court to substitute its judgment as to the credibility of witnesses for that of the trier of fact which heard the evidence and observed the demeanor of the witnesses. (*People v. Novotny,* 41 Ill.2d 401, 244 N.E.2d 182.) As has been stated, the defendants' (who were residents of Michigan) presence in the immediate vicinity was clearly established, the car in which they were riding as identified by several witnesses matched the description given by the girls and was identified by them when observed in Michigan, and the identification of the defendants in court by both Cindy Drollinger and Jackie

Morris was heard by the trier of fact and all of these factors cannot be said to be insufficient to support the verdict.

The defendant also contends that the sentence of 10 to 25 years for aggravated kidnapping was excessive. Under Illinois Revised Statues, chapter 38, paragraph 10—2(b)(2), aggravated kidnapping is a Class 1 felony, and the maximum term of incarceration for a Class 1 felony is any term in excess of 4 years (Ill. Rev. Stat., ch. 38, par. 1005—8—1(d) (2)). The minimum is to be 4 years "unless the court, having regard for the nature and circumstances of the offenses and the history and character of the defendant, sets a higher minimum term." Ill. Rev. Stat., ch. 38, par. 1005—8—1(c)(2).

■■ Under all the circumstances of this case, the sentence imposed was not excessive. The hearing in aggravation and mitigation disclosed that the defendant had a prior criminal record, and in fact, was in violation of his Michigan parole by being in Illinois at the time of this offense. In addition, the serious offense of aggravated kidnapping is further enhanced by the fact that the victim was a 12-year-old girl abducted for the purpose of a sexual assault. The standards of chapter 38, paragraph 1005—8—1(c)(2), for the setting of a minimum term in excess of 4 years were clearly satisfied here by the defendant's past record and the circumstances of the commission of the crime for which such sentence was imposed.

Therefore, the judgment and the sentence imposed are affirmed.

Affirmed.

SMITH, P. J., and TRAPP, J., concur.