**People of the State of Illinois, Respondent-Appellant, v. Herman Raddatz, Petitioner-Appellee.**

Gen. No. 51,958.

First District, First Division.

February 5, 1968.

John J. Stamos, State's Attorney of Cook County, of Chicago, (Elmer C. Kissane and Joseph V. Roddy, Assistant State's Attorneys, of counsel), for appellant.

Gerald W. Getty, Public Defender of Cook County, of Chicago (James J. Doherty, Assistant Public Defender, of counsel), for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

Pursuant to a petition filed on behalf of the defendant, the trial judge, after a pretrial bench hearing, suppressed the defendant's written confession. The State appeals from this order.

█ At the outset we are confronted with the contention by the defendant that the State has no right to appeal from an order suppressing a confession. We see no merit to this contention.

Supreme Court Rule 27 (Ill Rev Stats 1965, c 110, § 101.27) headed Procedure in Criminal Appeals provides in part:

> (4) In criminal cases the State may appeal from an order or judgment, the substantive effect of which results in dismissing an indictment, information or complaint; arresting judgment because of a defective indictment, information or complaint; quashing an arrest or search warrant; or *suppressing evidence* (Emphasis added.)

The courts of this state have repeatedly defined a confession as the highest type of evidence known to law. People v. Green, 17 Ill2d 35, 41, 160 NE2d 814. We hold that the State under this rule clearly has an absolute right of appeal from the order suppressing such evidence.

We summarize the evidence. John Motzny, a detective assigned to the homicide unit at the Shakespeare Avenue Police Station, proceeded with a fellow police officer to the apartment of the defendant, Herman Raddatz, on January 14, 1966. They arrived at the defendant's apartment at approximately 2:00 p. m. and found a Miss Nancy Jurkowski present in the apartment along with the defendant. The officers were seeking out the defendant in connection with an investigation they were making of

several robberies and a shooting that had recently taken place. In furtherance of their investigation Officer Motzny and his partner took the defendant to the Shakespeare Avenue Station. The officers arrived at the station at about 3:00 p. m. They left the defendant in the custody of other officers at the station and departed; arriving back at the station between 3:30 and 4:00 p. m. They brought with them Nancy Jurkowski and several items they had found in Miss Jurkowski's apartment. Matzny showed the items to the defendant and began to question Raddatz concerning his participation in the robberies and shooting then under investigation. After a short period of interrogation the defendant orally confessed to having committed a particular theft and shooting. Prior to his oral confession at the station Raddatz was not warned by the police concerning his constitutional rights to remain silent and to the presence of an attorney.

Shortly after the defendant had confessed, Officer Motzny took Raddatz to the office of the State's Attorney, arriving there at approximately 4:30 p. m. Motzny then accompanied the defendant to the office of John J. Stamos, an Assistant State's Attorney. At the hearing, on the motion to suppress, Stamos testified that he received a phone call from the defendant's attorney, Julius Sherwin, and that Sherwin had inquired whether Raddatz was in the custody of the State's Attorney for the purpose of giving a statement concerning a homicide. Stamos then called the defendant into his office and handed the phone to Raddatz so that the defendant could talk to his attorney. Stamos further testified that after the defendant had concluded his conversation with Sherwin he inquired of Raddatz whether he still wished to make a statement, warning Raddatz that he didn't have to make a statement and that anything he said could be used against him. Raddatz stated that he understood that he didn't have to make a statement. The defendant then made a state-

ment that was taken down by a court reporter and signed by Raddatz. This written confession, substantially the same as the oral one, previously given at the police station, was the subject of the defendant's motion to suppress.

Officer Motzny testified that he stood alongside of Raddatz during the defendant's conversation with his attorney. He further testified that the conversation lasted about three minutes, and that he heard the voice at the other end state in a loud manner that Raddatz shouldn't tell the State's Attorney anything. Officer Motzny stated that when Stamos warned the defendant that anything he said could be used against him Raddatz answered that he wanted to tell the truth.

Edward Horsky, an Assistant State's Attorney, testified that he was present at the transcription of the defendant's written confession; and that prior to the transcribing of the confession he had asked Raddatz whether Sherwin had told him that he didn't have to say anything, and the defendant had answered affirmatively.

Julius Sherwin, testifying on behalf of the defendant, denied that he had participated in a phone conversation with the defendant on January 14, 1966. He said he didn't recall any conversation with Stamos. He said the first knowledge he had that Raddatz, whom he had previously represented, was in custody, was at 5:30 p. m. of that particular day when he received a phone call from Nancy Jurkowski. The defendant denied that he had talked to his attorney while he was at the office of the State's Attorney. The defendant further testified that he had no idea why he was taken to the office of the State's Attorney because he had already confessed at the police station, and he thought ". . . that would be it."

The State, at the pretrial hearing, in its brief, and again at oral argument, conceded that the oral confes-

429

sion given by the defendant at the police station would not be admissible in evidence against the defendant because it was given in circumstances which failed to comply with the warnings enunciated by the Supreme Court in Miranda v. Arizona, 384 US 436 (1966). The State contends, however, that the trial judge erred when he concluded that a prior inadmissible confession in and of itself renders any later confession, constitutionally obtained, inadmissible. The State argues that the Supreme Court in Miranda and other cases has clearly rejected such an analysis.

We have been favored by careful findings of fact and conclusions of law made by Judge Irwin N. Cohen. In summing up the evidence, the trial judge found that the confession given at the Shakespeare Avenue Police Station was not surrounded by the warnings required by Miranda. The trial judge concluded that even if Stamos' recollection was correct, that the defendant had talked to his attorney prior to giving the written confession and had also been warned of his constitutional rights, the written confession still should be suppressed. The trial judge concluded that the warning had come too late to dissipate the effects of the earlier interrogation at the police station. The judge rejected the State's theory that the defects of the original confession were cured by the defendant's conversation with his attorney and by the giving of the correct warnings. The judge reasoned that the warnings would be of little use after the defendant had already confessed at the police station because Raddatz might well feel, " 'What use is a lawyer? What good is a lawyer now? What benefit can a lawyer tell me? I have already told the police everything?' " The trial judge further concluded that what happened in the State's Attorney's office " . . . was merely a formalizing, a setting down almost as a scrivener does, what had already taken place at Shakespeare Avenue Station."

In Miranda the United States Supreme Court announced certain basic guidelines for the use of procedural safeguards to secure the Fifth Amendment rights of a suspect subject to custodial interrogation: "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly, and intelligently." 384 US at Page 444. The court further held that a heavy burden rests upon the State to demonstrate that the defendant has knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. A suspect must make an intelligent decision to waive his constitutional privilege not to talk to the police, and to make such a decision the suspect must be fully apprised of the extent of his Fifth Amendment rights. The suspect must be made aware of the privilege so that a subsequent confession becomes an expression of free choice rather than a product of the inherent pressures of the interrogation atmosphere. The suspect must be made fully aware of the consequences of foregoing the privilege in a particular situation because, "It is only through an awareness of these consequences that there can be any assurance of real understanding and intelligent exercise of the privilege." 384 US at Page 469.

We find no merit to the State's position in the instant appeal that the trial judge erred in applying an absolute standard that a prior inadmissible confession in and of itself renders a subsequent constitutionally sound confession inadmissible. The judge did not apply such a standard to the facts of the instant case. It is apparent to us that the trial judge instead relied upon the Supreme Court's decision in Westover v. United States, 384 US 436

431

(1966), a companion case to Miranda, in deciding to suppress the defendant's confession. The State argues, however, that the written confession obtained in the State's Attorney's office was admissible under the authority of Westover, and that the trial judge departed from the precepts of that case in suppressing Raddatz' confession. We cannot agree with this contention.

In Westover, the suspect was arrested by local authorities and was held in custody for about fourteen hours. He was questioned periodically throughout this period of time. The suspect, Westover, was then turned over to the FBI for questioning, the questioning being carried out in the same physical surroundings used by the local authorities. The local police had not warned Westover during their interrogation of him of his constitutional rights. Prior to their questioning of the suspect, the FBI agents warned Westover concerning his rights under the Fifth Amendment. The FBI obtained written confessions from Westover which the Supreme Court ruled were inadmissible against him. The court held that although proper warnings were eventually given to Westover they came, as far as the suspect was concerned, at the end of the interrogation process. The FBI was, in effect, the beneficiary of the pressures applied by the local authorities. The court held that because the FBI interrogation had been carried out in the same location as that previously used by the local authorities and had followed immediately upon the questioning by the local authorities the giving of the proper warnings by the FBI was not sufficient to protect Westover's Fifth Amendment privilege. Under the circumstances an intelligent waiver by the suspect of his Fifth Amendment rights could not be assumed.

■ We believe that the trial judge properly applied the standard announced by the Supreme Court in Westover to the facts in the instant case. The judge concluded that the State's Attorney was the beneficiary of the com-

pelling pressures previously applied by the police at the Shakespeare Avenue Station, as the FBI had been the beneficiary of the pressures applied by the local authorities in Westover. He further concluded that under the factual circumstances of the instant case the State's Attorney and the Police Department could not be considered to be separate authorities sufficiently separated in time and place to render the written confession sufficiently insulated from the previous oral one. The record reveals that Raddatz was taken immediately to the office of the State's Attorney after he had made his oral confession at the police station. At the State's Attorney's office he essentially repeated his previous confession. These facts clearly support the trial judge's conclusion that what happened at the State's Attorney's office was merely a "formalizing" of what had happened earlier at the police station. The evidence adduced at the hearing supported the trial judge's conclusion that under the authority of Westover warnings alone, under the circumstances, were not sufficient to protect Raddatz' Fifth Amendment privilege.

The State argues that by warning the defendant of his constitutional rights and by allowing him to talk with his attorney it had done all that it could to dissipate the inherent pressures created at the police station, and to protect the defendant's constitutional rights. We cannot agree with this contention. Although we may assume, arguendo, that the defendant was given an opportunity to talk with his attorney at the office of the State's Attorney before he confessed, this conversation was carried on in the presence of the same officer, John Motzny, who had earlier been the recipient of the unlawful confession. In Miranda, the Supreme Court held that a suspect is entitled to the presence of an attorney during the interrogation process to assure the protection of his Fifth Amendment rights.

433

Raddatz testified that he felt that after he had given the oral confession at the police station no more would be required of him. In other words, he testified that he felt that the oral confession had conclusively established his guilt. The trial judge was entitled to believe this testimony. If a suspect is to intelligently waive his Fifth Amendment rights he is entitled to know the scope of the amendment's protection at the time he is being interrogated. In the absence of this knowledge of the consequence of his prior confession, Raddatz' waiver of rights cannot be considered one intelligently made. Williams v. United States, 328 F2d 669, 673, (5th Cir, 1964.)

It seems to us that the basis of both the Miranda and Westover decisions was the concern of the Supreme Court that any decision by a suspect to waive the Fifth Amendment privilege should be one that is intelligently and understandingly made. Unless the State can carry its heavy burden of showing that a suspect's waiver is based upon an informed judgment, the confession obtained will be assumed to be the product of the inherent compulsion of in-custody interrogation. We have concluded that the State, in the instant case, has failed to carry its burden of showing that Raddatz intelligently decided to waive his Fifth Amendment rights prior to giving the written confession at the office of the State's Attorney.

The State relies heavily on Lyons v. Oklahoma, 322 US 596 (1944); United States v. Bayer, 331 US 532 (1947); and People v. Myers, 35 Ill2d 311, 220 NE2d 297 (1967). In Lyons, unlike the instant case where the second confession followed almost immediately upon the first inadmissible one, the second confession was obtained twelve hours after the earlier inadmissible one. Furthermore, the suspect gave his second confession to different authorities in different surroundings; whereas, in the instant case, Raddatz gave his second confession to ostensibly the same authorities who had received the first inadmissible one. Also, in Lyons, none of the officers

charged with having coerced the original confession were present at the time the second one was given. Officer Motzny, the recipient of the first confession, accompanied Raddatz to the office of the State's Attorney. In Bayer the evidence showed that there was a lapse of six months between the taking of the two confessions. Furthermore, the suspect was not under arrest during this six month period. We conclude that Bayer and Lyons are inapplicable on the facts. We also point out that these two cases were decided prior to the Supreme Court's decision in Miranda and were decided primarily on the issue of coercion in the Due Process sense.

In Myers the Illinois Supreme Court pointed out that Miranda and Escobedo (Escobedo v. State of Illinois, 378 US 478 (1964)) were not applicable to the facts presented for review because those decisions were not to be applied retroactively. The court in Myers decided that the second confession was voluntary on the basis of Lyons, a case we have already decided to be inapplicable on the facts to the instant case. For the foregoing reasons we have concluded that the Myers decision is not controlling of our disposition of the instant case.

■ ■ We adopt the statement made by Judge Learned Hand in United States v. Gottfried, 165 F2d 360 (2d Cir, 1948), "Whether a confession is voluntary depends upon the facts that surround it, and the judge's decision is final as to its competence except in those cases, of which certainly this is not one, in which his finding of fact is untenable." At Page 367. See also, People v. Myers, 35 Ill2d 311, 320, 220 NE2d 297.

■ Where on the trial of a criminal case a confession of the defendant is offered in evidence, it becomes necessary for the trial court to determine as a preliminary question of fact whether the confession was freely and voluntarily made. If the confession offered in evidence follows an improperly obtained admission then it is for the trial judge to determine, whether the previous

435

coercive influences have been sufficiently dissipated to insure that the confession offered in evidence is the product of the free will of the defendant, and has not been obtained in abrogation of the defendant's Fifth Amendment rights. In so doing, the court is necessarily vested with a large discretion that will not be disturbed on appeal unless clear abuse is shown. People v. Hall, 38 Ill2d 308, 231 NE2d 416.

Here a careful, cautious and experienced judge, determined that the coercive pressures of the in-custody interrogation at the police station had not been adequately dispelled at the time that Raddatz gave his second confession. Therefore, he concluded that the defendant's second confession had not been understandingly and voluntarily made, and he decided to suppress it. We hold that the order entered suppressing the confession was justified. It is affirmed.

Affirmed.

MURPHY and ADESKO, JJ., concur.