THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* VICTOR RISZOWSKI, Defendant-Appellant.

(Nos. 58233-4 cons.;

First District (3rd Division)—September 5, 1974.

James J. Doherty, Public Defender, of Chicago (Paul D. Katz, Assistant Public Defender, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Patrick T. Driscoll, Jr., and Jerald A. Kessler, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Defendant, Victor Riszowski, was charged with petit theft and attempt deceptive practice. After a bench trial in the circuit court of Cook County, he was found guilty of both charges. He was sentenced to one year on each charge, the sentences to run concurrently. Defendant appeals, contending that the trial court committed reversible error in failing to suppress certain inculpatory statements attributed to him stemming from an allegedly illegal arrest.

On the date of trial, defendant requested a fourth continuance because his retained counsel had not appeared. The trial court denied the motion and informed defendant that he would have to go to trial on that day. An assistant public defender was appointed to represent defendant, and the case was passed for a short while.

When the case was called, appointed counsel again advised the court that defendant still wished time to hire private counsel. The trial judge again refused to grant a continuance. Thereupon, appointed defense counsel pleaded defendant not guilty, waived a jury trial, and made an oral motion "to suppress statements made by the defendant." The State agreed to waive its right to a written motion, and the hearing on the motion to suppress statements proceeded immediately.

One witness, Frank Capadona, the arresting officer, testified at that hearing. The record reveals that the direct examination by the defense attorney commenced in the following manner:

"Q. Did you have occasion to place the defendant under arrest?
A. I did.
Q. Did you have a warrant for his arrest?

A. I did not.

Q. Where was the defendant when you placed him under arrest?

A. He was hiding in the closet at 5105 West Huron.

Q. Did you see the defendant commit any crime?

A. No, I didn't."

The balance of the examination by defense counsel related to the voluntariness of the statements given by the defendant and to the officer's compliance with the giving of the *Miranda* warnings.

Officer Capadona testified that after he had advised defendant fully concerning his constitutional rights under *Miranda,* defendant at the scene of the arrest made an oral inculpatory statement. Defendant was then taken to the police station where he orally repeated to Officer Capadona the confession he had given earlier. The second statement was preceded by another admonishment of his *Miranda* rights and defendant's signed waiver of those rights.

The prosecutor devoted his entire cross-examination of the officer to showing that the *Miranda* warnings had been given and that defendant's confession had been produced voluntarily. No other witness testified at the hearing on the motion to suppress statements and both sides waived argument. The trial judge denied the motion to suppress, and the matter proceeded to trial.

James Baraniak, the owner of a currency exchange in the City of Chicago, testified that on April 5, 1972, defendant entered the currency exchange, put his endorsement on the reverse side of a check, and requested that it be cashed. Defendant stated that the check belonged to his sister-in-law who was shopping next door. Defendant stated that he would go and bring her to the currency exchange. Defendant left without the check and without getting any money. He did not return. Thereafter, the witness called the police. The witness also identified the check possessed by defendant as one naming Mary Bishop as the payee.

Mary Bishop testified that on the day in question Officer Capadona visited her and inquired about the defendant. She told the officer that she believed defendant resided downstairs in the same building. The witness received a monthly public aid check in the mail at her address. At trial she identified the check bearing her name as payee and defendant's name as one of the endorsers as her public aid check. She testified that she had never signed her name on the back of the check, and had never given anyone permission to exercise control over the check.

Officer Capadona testified at trial that, upon concluding a conversation with Baraniak at the currency exchange, he went to Mrs. Bishop's apartment and talked to her briefly. He then proceeded downstairs and talked to a tenant named Mrs. Smith. Upon receiving permission, the

officer conducted a search and discovered defendant in a bedroom closet. After defendant was arrested and fully informed of his constitutional rights, he was questioned by the officer in the apartment. The officer testified that defendant told him that he had taken the check in question from Mrs. Bishop's mailbox and attempted to cash it. Defendant was then taken to the police station where, after again being informed of his rights, he repeated to Officer Capadona the same statements he earlier had made in the apartment.

The defendant did not call any witnesses at trial. After both sides waived closing argument, the trial judge, sitting as trier of fact, found defendant guilty of both charges and sentenced him.

Defendant contends that the State did not establish probable cause for his arrest at the hearing on his motion to suppress statements, and that the trial court thus erred in permitting his statements to be introduced into evidence. The State initially counters by maintaining that defendant waived the issue of probable cause for the arrest. It reasons that the thrust of defendant's motion and argument at the hearing was directed toward establishing the invalidty of defendant's statements based upon *Miranda* and, consequently, that defendant should be foreclosed from raising the issue on appeal.

■■ We cannot accept the State's view of the nature of the hearing on the motion to suppress. In the first place, it is clear that defendant's motion to suppress statements was not expressly predicated upon a violation of the *Miranda* standards. Furthermore, although it is true that defense counsel devoted most of his examination at the hearing to questions concerning the voluntariness of defendant's statements and the officer's compliance with *Miranda*, the record clearly indicates that the first questions asked the arresting officer by defense counsel at the hearing directly related to the circumstances surrounding defendant's arrest and not to his later statements. (Compare *People v. Harris* (1969), 105 Ill.App.2d 305, 245 N.E.2d 80.) Moreover, in light of the manner of appointment of defense counsel, we are reluctant to impose the doctrine of waiver. (See *People v. Montgomery* (1972), 51 Ill.2d 198, 282 N.E.2d 138.) The trial court was well within its discretion in denying defendant's motion for a continuance, but appointed counsel obviously had only a brief time to consult with his client and to become acquainted with the facts. We conclude that the issue of probable cause for arrest was preserved for review.

■■ We next consider whether defendant proved at the hearing that no probable cause existed to justify his arrest. A police officer may arrest a person without a warrant when he has reasonable grounds to believe that the person is committing or has committed an offense. (Ill. Rev.

Stat. 1971, ch. 38, par. 107—2(c).) Probable cause exists when a reason-
able and prudent man in possession of the knowledge which has come
to the arresting officer's attention would believe the person to be arrested
is guilty of the crime. (*People v. Harper* (1973), 16 Ill.App.3d 252, 305
N.E.2d 680.) The burden of proving that defendant's statements were
not given incident to a lawful arrest rests with the defendant. Ill. Rev.
Stat. 1971, ch. 38, par. 114—12(a)(1).

As shown above, defense counsel immediately acertained at the hear-
ing that the officer did not have a warrant for defendant's arrest and
that the officer had not observed defendant committing any crime. It is
well established that once defendant has made out a prima facie case
that the police lacked probable cause, the burden of going forward shifts
to the State to negate that evidence at the hearing. *People v. Cassell*
(1968), 101 Ill.App.2d 279, 243 N.E.2d 363; *People v. Williams* (1973),
16 Ill.App.3d 440, 306 N.E.2d 678; *People v. King* (1973), 12 Ill.App.3d
355, 298 N.E.2d 715; see also *People v. Roebuck* (1962), 25 Ill.2d 108,
183 N.E.2d 166.

■■■ In the present case, defendant satisfied his legal burden. The
arresting officer admitted that he had no arrest warrant and that he had
not observed defendant commit any crime. Although defendant was ar-
rested in a bedroom closet, it cannot be said that the evidence adduced
at the hearing showed that defendant was doing anything unusual at
the time of his arrest. It is indisputable that the State did not go forward
at the hearing to rebut defendant's showing of no probable cause. The
State now attempts to show by the testimony adduced at trial that the
police possessed probable cause jusifying defendant's arrest, but the
above-cited cases direct that the evidence to negate the lack of probable
cause be produced by the State at the hearing on the motion to suppress
and not later at trial. We are compelled to hold that the proof adduced
at the hearing on the motion did not indicate that the police had prob-
able cause for the arrest and, therefore, that the arrest was illegal.

■■ The courts in this state, in accord with the majority view, have
ruled that the illegality of an arrest will not ipso facto render infirm
statements made by the accused subsequent to his arrest, thus requiring
their automatic suppression from evidence at trial. (*People v. Brown*
(1974), 56 Ill.2d 312, 307 N.E.2d 356; *In re Tucker* (1974), 20 Ill.App.3d
377; *In re Lamb* (1974), 21 Ill.App.3d 827.) Moreover, the United States
Supreme Court has directed that we need not characterize all evidence
to be fruit of the poisonous tree

> "* * * simply because it would not have come to light but
> for the illegal actions of the police. Rather, the more apt question
> in such a case is 'whether, granting establishment of the primary

illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' " (*Wong Sun v. United States* (1963), 371 U.S. 471, 488.) The court has further held that purgation of the taint can be established by a showing that the challenged evidence had been obtained from an independent source (see *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385) or that the connection between the lawless conduct of the police and the discovery of the challenged evidence had become so attenuated as to dissipate the primary illegality. See *Nardone v. United States* (1939), 308 U.S. 338.

■■ While illegal police conduct is but one circumstance to be considered regarding any question as to the voluntariness of a later confession (see *People v. La Frana* (1954), 4 Ill.2d 261, 122 N.E.2d 583), resolution of that issue will not in and of itself settle the question of purgation of the original primary illegality. As Justice Tuttle pointed out in *Collins v. Beto* (5th Cir. 1965), 348 F.2d 823, 829:

"* * * if a mere showing that a confession during a period of unlawful detention was 'voluntary' were sufficient to establish its admissibility, *Wong Sun* would be an empty promise, for the inadmissibility of 'involuntary' confessions has long been fully recognized."

(Also see *People v. Johnson* (1969), 70 Cal.2d 541, 450 P.2d 865, 75 Cal. Rptr. 401, *cert. denied* (1969), 395 U.S. 969.) Once an arrest is shown to be illegal, a confession following the arrest shall be presumed to be the product of that illegality, with the State bearing the burden of establishing a purgation of the illegality on the basis of the *Wong Sun* doctrine. *People v. Landgham* (1970), 122 Ill.App.2d 9, 257 N.E.2d 484, *cert. denied* (1971), 402 U.S. 911; *Collins v. Beto, supra* (Tuttle, J.); *Bynum v. State* (Okla. Crim. App. 1971), 490 P.2d 531.

An examination of the facts presented at the instant motion to suppress statements reveals that upon being discovered in the apartment, defendant was placed under arrest, immediately apprised of his constitutional rights, and orally questioned at the scene. The record is silent regarding the questions asked defendant on the scene, the kind of evidence, if any, with which he was confronted, and the nature of the information the police may have obtained regarding defendant's involvement in the offenses. It appears, therefore, that the giving of the *Miranda* warnings is the sole basis relied upon to attenuate the connection between the illegal arrest and defendant's statement made immediately thereafter.

■■ In *Commonwealth of Pennsylvania v. Maroney* (3rd Cir. 1965),

348 F.2d 22, *cert. denied* (1966), 384 U.S. 1019, the court discussed what must be shown by the State to establish a case of attenuation. The court found two specific factors to be of major significance in determining the relationship between an illegal arrest and a later confession: the proximity of an initial illegal custodial act to the procurement of the confession, and the intervention of other circumstances subsequent to the illegal arrest which provide a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been directly derived from that illegal arrest. (Also see *In re Betrand* (1973), 451 Pa. 381, 303 A.2d 486; *State v. Newell* (Mo. S.Ct. 1971), 462 S.W.2d 794.) The importance of these two factors was emphasized in *United States v. Kilgen* (5th Cir. 1970), 431 F.2d 627, *modified on other grounds* (5th Cir. 1971), 445 F.2d 287, with the court supplying an additional element: whether the arrest involved the failure to comply with technical requirements or whether it amounted to a gross violation of due process.

In the present case, there was no appreciable lapse of time between the illegal arrest and the inculpatory statement by the accused. The arrest did not involve the failure of the police to comply with "technical requirements" but rather by their failure to possess probable cause to justify the arrest. The only "unrelated" intervening circumstance offered to break the causal connection between the primary illegality and the giving of the confession was the arresting police officer's giving of the *Miranda* warnings.

■■ While the bald fact that the *Miranda* warnings were given to the accused prior to his giving an inculpatory statement after an illegal arrest may be a factor evidencing an intervening act of free will on the part of the accused, we hold that the issuance of the warnings does not per se demonstrate the requisite attenuation as a matter of law (See *People v. Johnson, supra; In re Betrand, supra; United States v. Kilgen, supra; Bynum v. State, supra; People v. Hatcher* (1969), 2 Cal.App.3d 71, 82 Cal. Rptr. 323.) To hold otherwise would permit the police to be free to arrest without probable cause, secure in the knowledge that the mere giving of the *Miranda* warnings might result in their obtaining a confession which would be admissible at trial.

We hold, therefore, that the mere fact that *Miranda* warnings were given by the police prior to an immediate interrogation of defendant at the scene of an illegal arrest, without more, fails to establish attenuation under *Wong Sun* sufficient to dissipate the taint and allow at trial the introduction into evidence of the confession given at the scene. Consequently, our facts and holding are clearly distinguishable from *People v. Brown, In re Tucker,* and *In re Lamb,* where the accuseds' statements were made away from the scene of the illegal arrests, after an apprecia-

ble length of time had passed after the arrests, and after the accuseds had been afforded their full *Miranda* rights. The first confession by defendant in the instance case should have been suppressed.

In evaluating the second statement given by defendant, the record shows that after defendant had uttered his inculpatory statement at the scene of his arrest, he was immediately taken to the police station where, after he had again been informed of his rights and after he had signed a written waiver, he repeated orally what he had said at the scene.

As far back as *People v. Sweetin* (1927), 325 Ill. 245, 156 N.E. 354, our supreme court expressed its concern over the admissibility into evidence of a second confession where the first confession had been found to have been secured by improper means. The court held there that the evidence must show, through lapse of time or otherwise, that the influence inducing the first confession had been removed at the time of the second confession. This burden is further weighted down by the court's assertion in that case that the second confession shall be presumed to be the product of the same influence inducing the first illegal confession. See *People v. Taylor* (1965), 33 Ill.2d 417, 211 N.E.2d 673.

In resolving the issue of the admissibility of defendant's second confession, we believe that our decision in *People v. Raddatz* (1968), 91 Ill.App.2d 425, 235 N.E.2d 353, is controlling. In that case, the State argued that a second confession of defendant, given after defendant had been informed of his *Miranda* warnings, should have been held admissible despite the invalidity of a prior confession. In rejecting the argument, we relied upon three factors: the short time lapse between the two confessions; the fact that the confessions were made to essentially the same authority; and the continuousness of defendant's custody. Likewise, in the present case, the second confession was made soon after the first; both were given to the same police officer; and defendant remained in continuous custody. Additionally, the second statement was a repetition of the earlier illegal confession. We believe that the trial court erred in admitting into evidence defendant's second confession given at the police station.

We next turn to a consideration of what effect these errors will have on the judgments of conviction rendered by the trial court.

■■ It is settled that constitutional errors may occur which, in the setting of a particular case, are so unimportant and insignificant that they may be deemed harmless. In such cases, the errors will not affect a judgment of conviction if we are able to declare that the errors were harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18; *Milton v. Wainwright* (1972), 407 U.S. 371.

■■ As to the charge of attempt deceptive practice, we believe that,

750

in this bench trial, the introduction of defendant's statements amounted to harmless error beyond a reasonable doubt. There was an uncontradicted and unmistaken eyewitness identification of defendant as the person who entered a currency exchange with Mrs. Bishop's check, who placed his signature upon it, and who without permission or authority attempted to cash the check. The direct and competent evidence of defendant's guilt of attempt deceptive practice was overwhelming, untainted by the erroneous introduction into evidence of defendant's statements.

■■ On the other hand, with regard to the charge of theft, we are unable to conclude that the introduction into evidence of defendant's statement that he had stolen the check in question from Mrs. Bishop's mailbox was harmless error beyond a reasonable doubt. As to the theft charge, it seems evident that defendant's statement contributed significantly to his conviction. Accordingly, that conviction cannot stand.

For the reasons stated, the judgment of the circuit court of Cook County as to the charge of attempt deceptive practice is affirmed. The judgment of conviction as to the petit theft charge is reversed, and that cause is remanded for further proceedings not inconsistent with the holdings of this opinion.

Affirmed in part; reversed in part.

DEMPSEY and McGLOON, JJ., concur.