*In re* R. S., a Minor.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* R. S., Respondent-Appellant.)

Third District   No. 80-448

Opinion filed March 12, 1981.

Robert A. Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Gerry R..Arnold, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

R. S., a minor, appeals from an order of the circuit court of Fulton County adjudging him delinquent, making him a ward of the court, and committing him to the juvenile division of the Department of Corrections. The petition alleged the minor had burglarized two residential premises in Farmington, Illinois, and had stolen property with a value of under $150 from a Canton K-Mart store. The allegations were based in part on confessions made by R. S. during two custodial interrogations. Prior to the adjudication, the minor moved to suppress the confessions, claiming them to be fruits of an illegal arrest. The court denied the motion and found that R. S. had committed the two Farmington burglaries. Due to the lack of evidence, the court dismissed the theft count. The only issue presented on appeal is whether the May 1 confession was received in violation of the minor's fourth and fourteenth amendment rights. We find the confession was properly admitted.

On April 30, 1980, Canton police officer Ronald Pavely telephoned the Farmington police requesting them to "pick up" the minor for questioning in regard to an alleged theft at a Canton K-Mart store. No warrant for R. S.'s arrest had been issued. As Pavely related at the suppression hearing, his basis for making his request was "information that some batteries were taken from a closed-in area immediately to the west side of the [K-Mart] store [in Canton] and that those batteries had been taken to I. Borg and Sons in Peoria; and [R. S.] had received a check for those batteries." Approximately two hours after Farmington police had detained R. S., Pavely arrived and advised the minor of his *Miranda* rights. At the time he was picked up, R. S. apparently was doing nothing unusual. His two-hour detention took place in a jail cell. The minor said he understood his rights and desired to speak with Pavely. R. S. then implicated himself in an April 25 theft of several used batteries from the Canton K-Mart. Later that day, Pavely transferred R. S. to the Fulton County Jail. R. S., who was 16 years old at the time of the offense, was placed in the county jail, rather than in the Juvenile Detention Center because he told the police he was 17 years old. One day later in the afternoon of May 1, 1980, two Farmington police officers, Fred Winterroth and Rick Lewis,

removed R. S. from his cell and interrogated him in regard to a Farmington burglary. The minor, after receiving his *Miranda* warnings, confessed to two Farmington burglaries, at 90 W. Fort St. and 89 S. Wall St. The basis for the May 1 interrogation follows.

On April 25, 1980, Ethyl Robinson reported that her house, located at 90 W. Fort St., Farmington, had been burglarized. One of the items stolen was a mahogany mantel clock. In an apparently routine conversation on April 30, Winterroth asked Betty Rilea, a caseworker for the Department of Children and Family Services, whether she had observed the clock in a client's household. Rilea recalled she had seen a mantel clock fitting the description of the stolen one in the apartment of Ann Kurzan. On May 1, Winterroth, with Kurzan's consent, entered the apartment and examined the clock. He returned at approximately 12:40 p.m. that day with a search warrant to seize the clock. When Winterroth executed the warrant, Kurzan informed him she had received the clock from R. S., who also lived in the apartment. Winterroth then interrogated the minor that day at approximately 3 p.m. Following R. S.'s confession to the two burglaries, the Farmington police, armed with a second warrant to search R. S.'s (and Kurzan's) apartment, seized contraband stolen from 89 S. Wall St., the second burglarized premises.

The minor contends the circuit court erred in denying his motion to suppress the confessions because Pavely's instruction to the Farmington police was without probable cause; thus, the April 30 detention violated R. S.'s fourth and fourteenth amendment rights. Second, because he was arrested without probable cause, he contends the illegality of the arrest tainted the April 30 confession regardless of whether *Miranda* warnings were given. (*Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.) Third, the minor's argument concludes that, if the April 30 confession was unlawful, the subsequent May 1 confession is presumed likewise unlawful; therefore, that confession must also be suppressed. *People v. Raddatz* (1968), 91 Ill. App. 2d 425, 235 N.E.2d 353.

■■ There is no question the April 30 detention of R. S. by the Farmington police constituted an arrest for fourth amendment purposes. (See *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.) Of course, fourth amendment guarantees apply equally to the States through the fourteenth amendment. (*Mapp v. Ohio* (1961), 367 U.S. 643, 6 L. Ed. 2d 1081, 81 S. Ct. 1684.) Moreover, minors in juvenile delinquency proceedings receive the same fourth amendment protections as do their adult counterparts. (*In re Marsh* (1968), 40 Ill. 2d 53, 237 N.E.2d 529.) One of those protections provides that statements made by an arrestee who was unlawfully seized may be excluded even if police had advised the arrestee of his *Miranda* rights. *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

Upon reviewing the transcript of the suppression hearing, we are uncertain whether the Canton police, who instructed the Farmington police to apprehend R. S. (see *United States v. Ventresca* (1965), 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741), lacked probable cause to sustain the warrantless arrest, as the minor contends. We decline, however, to rule upon the propriety of the arrest because: (1) the circuit court dismissed the count based on the April 30 K-Mart confession which immediately followed the arrest; and (2) assuming, *arguendo*, that the Canton police acted without probable cause and hence, unlawfully arrested R. S., we find the May 1 confession to be untainted by the (assumed) illegality. *Brown v. Illinois* (1975), 422 U.S. 590, 45 L. Ed. 2d 416, 95 S. Ct. 2254.

The United States Supreme Court in *Brown* attempted to clarify the interstice between the fourth and fifth amendments. There, following his admittedly illegal arrest, Brown confessed after being detained for less than two hours. The arresting officers had properly advised Brown of his *Miranda* rights. The Illinois Supreme Court, in upholding the admissibility of the statement, declared that *Miranda* warnings break the causal chain of an illegal arrest, "so that any subsequent statement, even one induced by the continuing effects of unconstitutional custody, was admissible so long as, in the traditional sense, it was voluntary and not coerced in violation of the fifth and fourteenth amendments." (*Brown v. Illinois* (1975), 422 U.S. 590, 597, 45 L. Ed. 2d 416, 423, 95 S. Ct. 2254, 2258.) In rejecting the Illinois per se rule, the court cautioned that if *Miranda* warnings alone attenuated the illegality of the arrest, the positive effect of the fourth amendment's exclusionary rule would be diminished. According to the court, without the exclusionary rule's deterrent effect, police could wantonly arrest suspects without warrant or probable cause and would be safe in knowing "that evidence derived therefrom could well be made admissible at trial by the simple expedient of giving *Miranda* warnings." (*Brown v. Illinois* (1975), 422 U.S. 590, 602, 45 L. Ed. 2d 416, 426, 95 S. Ct. 2254, 2261.) To prevent such fourth amendment violations, the court applied the exclusionary rule to post-arrest statements. Thus, an illegal arrest could taint a subsequent statement made by the arrestee even if *Miranda* warnings were given. To determine whether a statement was obtained by exploitation of the illegality of the arrest or whether it represented an act of free will unaffected by the initial illegality, the court announced a four-part test:

> "The *Miranda* warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. But they are not the only factor to be considered. The temporal proximity of the arrest and the confession, the presence of intervening circumstances, [citation], and, particularly, the purpose and flagrancy of the official misconduct are all

relevant. [Citation.] The voluntariness of the statement is a threshold requirement. [Citation.] And the burden of showing admissibility rests, of course, on the prosecution." *Brown v. Illinois* (1975), 422 U.S. 590, 603-04, 45 L. Ed. 2d 416, 427, 95 S. Ct. 2254, 2261-62.

■■ An application of the *Brown* analysis to the case at bar demonstrates that the Farmington police obtained the May 1 confession without exploitation of the illegality of the arrest. There is no question the May 1 confession conformed to fifth amendment voluntariness requirements. Likewise, there is no question Winterroth advised R. S. of his *Miranda* rights.

The second factor, temporal proximity of the arrest and the confession, shows any illegality to have dissipated when R. S. confessed on May 1. According to the reasoning in *Brown*, as the length of time separating arrest and confession increases, so does the dissipation of the taint. (But see 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §11.4(b), at 633-34 (1978).) The two-hour lapse between arrest and confession in *Brown* failed to dissipate the taint. (See also *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248 (one hour of illegal custody held to be insufficient to attenuate taint).) In the instant case, the minor was first detained at approximately 11 a.m. on April 30. More than 24 hours later, at 3 p.m. on May 1, R. S. confessed to the Farmington burglaries. Whatever taint initially existing would have dissipated within that period separating arrest and confession.

Although the first two *Brown* factors are material in determining whether inculpatory statements were sufficiently a product of the arrestee's free will to be admissible, the more important factors are the presence of intervening circumstances and the purposefulness and flagrancy of the official misconduct. (See 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §11.4(b), at 638 (1978).) Obviously, if the statement does not conform to the traditional voluntariness standard or the police failed to give *Miranda* warnings, the inculpatory statement will be excluded by the fifth amendment. The second *Brown* factor has been attacked because it fails to consider the inherently adverse effects of prolonged illegal incarceration on the arrestee's free will. (See *Dunaway v. New York* (1979), 442 U.S. 200, 220, 60 L. Ed. 2d 824, 841, 99 S. Ct. 2248, 2260 (Stevens, J., concurring).) The purpose of *Brown* is to deter blatantly unlawful arrests which produce inculpatory statements through police exploitation instead of the arrestee's exercise of free will. Thus, the degree of the illegality at the time the statement was made, as measured by (1) the extent of police misconduct (see *Brown v. Illinois* (1975), 422 U.S. 590, 606, 45 L. Ed. 2d 416, 430-31, 95 S. Ct. 2254, 2263 (Powell, J., concurring)), and (2) the presence of intervening circumstances which

enable the arrestee to make a voluntary statement as an act of free will (*Wong Sun v. United States* (1963), 371 U.S. 491, 9 L. Ed. 2d 441, 83 S. Ct. 407), will usually determine whether the statement was tainted by a fourth amendment violation.

The record indicates no purposeful exploitation of the April 30 arrest, another *Brown* factor, when Winterroth conducted his May 1 interrogation of R. S. in the Fulton County State's Attorney's Office. Pursuant to an April 25 report of a Farmington burglary, the police received information from a social worker on April 30 that the stolen property was located in a client's apartment. According to *Wyman v. James* (1971), 400 U.S. 309, 27 L. Ed. 2d 408, 91 S. Ct. 381, the social worker's observations made during a routine visit did not constitute a search for fourth amendment purposes. After obtaining and executing a search warrant for the apartment on May 1, Winterroth learned the lessee had received the stolen goods from R. S., who also lived in the apartment. Thus armed with probable cause, Winterroth interrogated the minor that same day in the State's Attorney's office. Clearly, the Farmington police would have lawfully arrested R. S. on May 1 for the burglary had not Pavely arrested him on April 30 for the Canton theft. Had the record indicated that Winterroth had probable cause to arrest R. S. prior to Pavely's April 30 arrest but elected to interrogate him following one day of incarceration in hopes of eliciting a confession which he otherwise might not have gained, our result might be different. In the case at bar, however, we find no hint that Winterroth delayed his interrogation in hopes of exploiting R. S.'s incarceration-weakened resolve. Furthermore, we will not exclude the May 1 confession merely because the Farmington police initially detained R. S. on an unrelated matter. The Farmington police had no meaningful participation in the decision to arrest R. S.; they acted solely on the request of the Canton police.

The State argues that Winterroth's independent investigation of the Farmington burglaries constituted an "intervening circumstance," the last *Brown* factor. Although *Brown* failed to explain what qualifies as an intervening circumstance because "there was no intervening event of significance whatsoever" (*Brown v. Illinois* (1975), 422 U.S. 590, 604, 45 L. Ed. 2d 416, 428, 95 S. Ct. 2254, 2262; see also *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248), subsequent case law has identified one kind of intervening circumstance: the confrontation of the arrestee with untainted evidence which produces a voluntary desire to confess. (See, 3 W. LaFave, Search and Seizure: A Treatise on the Fourth Amendment §11.4(b), at 637 (1978); *Commonwealth v. Barnett* (1977), 471 Pa. 34, 369 A.2d 1180.) In the instant case, not only did Winterroth confront R. S. with evidence gathered independently of the April 30 arrest, the evidence was uncovered by a completely different police force

and pertained to an offense unrelated to the arrest. As such, the second interrogation constituted an intervening circumstance. Moreover, upon arriving in the Fulton County jail, Winterroth transferred R. S. to the State's Attorney's office to conduct the interrogation. Although the minor's improved environment alone would probably not constitute an intervening circumstance sufficient to allow the arrestee to gather his wits and make a voluntary statement, the change no doubt facilitated the minor's voluntary desire to confess.

■■ Last, the minor contends that because the April 30 confession was a tainted product of an unlawful arrest made just hours previously, the May 1 confession is presumed to be a product of the same influence inducing the first illegal confession. (*People v. Raddatz* (1968), 91 Ill. App. 2d 425, 235 N.E.2d 353.) The minor's reliance is misplaced; the *Raddatz* presumption is inapplicable to the instant case. The *Raddatz* court considered three factors in determining whether a second statement which followed a first and tainted statement, was likewise tainted by the illegal arrest: the brief period of time separating the statements; the common authority to which the statements were made; and the arrestee's uninterrupted custody. The case at bar lacks all of the *Raddatz* factors: more than 24 hours following R. S.'s first statement and after the Farmington police transferred him to the State's Attorneys office from the county jail, R. S. made the May 1 confession to a completely different authority. (Accord, *People v. Thomas* (1980), 80 Ill. App. 3d 1121, 400 N.E.2d 1019; *People v. Riszowski* (1974), 22 Ill. App. 3d 741, 318 N.E.2d 10.) Similarly, the minor would equate this case with *Brown*, which excluded a second inculpatory statement because Brown had made one prior statement, believed by him to be admissible, which "bolstered the pressures for him to give the second, or at least vitiated any incentive on his part to avoid self-incrimination." (*Brown v. Illinois* (1975), 422 U.S. 590, 606 n.12, 45 L. Ed. 2d 416, 428 n.12, 95 S. Ct. 2254, 2262 n.12; see also, *Dunaway v. New York* (1979), 442 U.S. 200, 60 L. Ed. 2d 824, 99 S. Ct. 2248.) *Brown* and *Dunaway* are inapplicable to the case at bar. In each case the arrestee's second statement consisted of a more complete version of his first inculpatory statement. Here, the second confession concerned matters completely unrelated to the first; hence, the April 30 confession in no way pressured R. S. to give the May 1 confession.

For the foregoing reasons, we find the May 1 confession to be untainted by any illegality and therefore admissible. Accordingly, we affirm the order of the circuit court of Fulton County.

Affirmed.

ALLOY and BARRY, JJ., concur.