THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, *v.*
GREG P. LEVENDOSKI, Defendant-Appellee.

Third District    No. 80-553

Opinion filed September 30, 1981.—Rehearing denied October 30, 1981.

HEIPLE, J., concurring and dissenting.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Rita F. Kennedy, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal by the State from a judgment of the circuit court of Will County suppressing confessions of the defendant, Greg Levendoski. On June 4, 1980, the defendant was indicted for armed robbery. On September 8, 1980, the defendant moved to suppress his confession. Following a hearing, the defendant's motion was granted and the State appeals.

At the hearing three witnesses testified for the State. James Montesanto, a detective employed by the Du Page County sheriff, was the State's first witness. Montesanto testified that on the morning of May 14, 1980, a Du Page County jailer came to the detective bureau and said that an inmate wished to talk to a detective. Montesanto went to the prisoner section of the jail complex and the defendant was brought to him. Montesanto asked what the defendant wished to talk about and the defendant said an armed robbery. Montesanto asked for more details, and the defendant replied that it took place at the Kentucky Fried Chicken in Bolingbrook. Montesanto determined that it was outside his jurisdiction and told the defendant that he would contact the Bolingbrook police

department. The defendant agreed that Montesanto should do so. When Montesanto asked the defendant why he was disclosing the information, the defendant replied that he had a drug problem that he wanted to straighten out and that he wanted to get back in the army. Following the conversation, the defendant was returned to his cell. Montesanto denied that he had any conversation with the defendant regarding a "deal." The defendant returned to his cell and Montesanto called the Bolingbrook police department and requested the two officers for whom the defendant had asked.

One of the two officers was Detective Wilkerson, who was the second witness for the State. Wilkerson testified as follows. On May 14, he and Detective Ranum went to the Du Page County jail. Prior to speaking with the defendant, they talked with Montesanto. Montesanto told them he had spoken with the defendant earlier and that, in his opinion, the defendant wanted to make a deal. Montesanto also told them that he had not discussed any deals with the defendant nor made any promises to him.

Wilkerson, Ranum and Montesanto then went to see the defendant. The defendant was taken to a small interview room, and Montesanto left. Wilkerson told the defendant that he understood the defendant wanted to talk to them, and the defendant replied that he did. Wilkerson then read the defendant his *Miranda* rights, and the defendant said that he understood these rights. The defendant then was asked if he had been promised anything prior to talking to Wilkerson and the defendant stated he had not. The defendant's replies to these questions were written on a form, and the defendant initialed his responses on the form.

After completing the form, Wilkerson told the defendant that he understood that the defendant wanted to discuss the armed robbery. The defendant replied that he did and proceeded to state the part he had played in it. The defendant also discussed his drug problem with Wilkerson. He told Wilkerson he was not addicted but was afraid he might become addicted. The defendant asked what was going to happen to him, and Wilkerson informed him that armed robbery was a nonprobationable, Class X felony with a minimum sentence of six years and a maximum sentence of 30 years. The defendant stated he might be able to get drug treatment in prison, and Wilkerson told him the adult program did not have the same programs available as the juvenile system.

Wilkerson then said he wished to return to the facts of the robbery, and the defendant consented to let Wilkerson tape record his statement about the armed robbery. The tape was admitted into evidence and was played. On the tape, the defendant stated that he understood his *Miranda* warnings, repeated the story of the armed robbery, and denied that

anyone had promised him anything. The defendant also stated his confession was voluntary, without coercion, threats or promises.

Detective Ranum of the Bolingbrook Police Department was the State's final witness. He testified that on May 14, 1980, he accompanied Wilkerson to interview the defendant. His testimony was substantially the same as Wilkerson's.

After Ranum's testimony, defense counsel orally expanded his motion to suppress to include the defendant's statement to Montesanto on the basis that the defendant was not advised of his *Miranda* warnings prior to talking to Montesanto. The defendant then testified on his own behalf. He testified that on May 14, 1980, he was incarcerated at the Du Page County jail. He told the jailer he would like to turn State's evidence on an armed robbery. The jailer took him to see Montesanto, and the defendant told Montesanto he would like to turn State's evidence in the armed robbery. The defendant testified he told Montesanto he would like immunity or probation, and Montesanto told him it was not his jurisdiction but that he would contact the Bolingbrook Police Department.

Approximately 45 minutes later Wilkerson and Ranum came to the jail. The defendant testified that he was taken to an interrogation room where Wilkerson agreed to try to work a deal out for the defendant. Defendant testified that he signed the questionnaire indicating no promises had been made because Wilkerson told him it would be best to do so. He further testified he was never told that armed robbery was a Class X felony with a minimum mandatory sentence of six years. He thought he would get probation and drug treatment.

Five days later the defendant's custody was transferred to the Bolingbrook Police Department. The next day he was brought to the Will County courthouse by Wilkerson. When he appeared in court, he told the judge he wanted to plead guilty and get it over with, meaning get probation and drug treatment. The judge to whom the case was referred refused to accept the defendant's plea without counsel. Thereafter, a suppression motion was filed and heard by a different judge.

After the testimony of another witness, the defense rested. The State had two rebuttal witnesses. Following lengthy oral arguments by counsel, the judge held that both the confession to Montesanto and the confession to Wilkerson should be suppressed.

On appeal, the State raises two issues: (1) whether or not the judge erred in suppressing the defendant's statement to Montesanto; and (2) whether or not the judge erred in suppressing the defendant's confession to Wilkerson. We affirm in part and reverse in part.

The first issue with which we deal is whether or not the defendant's statement to Montesanto should have been suppressed. In granting the defendant's motion to suppress, the trial judge ruled that the defendant

should have been advised of his *Miranda* rights. The trial judge held that it was irrelevant that the defendant was in custody on unrelated charges since it was clear that he was in custody at the time of the interview.

The State concedes that the defendant was in custody. However, they contend that the *Miranda* rights need not have been given because Montesanto did not initiate a custodial interrogation of the defendant. The State claims that the defendant's statement was voluntary and that under such circumstances the defendant need not be informed of his *Miranda* rights.

■■ While it is true that *Miranda* does not require the police to interrupt a voluntary statement, we do not believe the instant case falls in that category. Montesanto knew the defendant wanted to talk to him and proceeded to ask questions which elicited information. Under the circumstances, Montesanto could reasonably have expected the defendant to implicate himself. *Miranda* applies "not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Rhode Island v. Innis* (1980), 446 U.S. 291, 301, 64 L. Ed. 2d 297, 307-08, 100 S. Ct. 1682, 1689-91.) Since there was express questioning which the officer could have reasonably expected the defendant to incriminate himself in answering, the *Miranda* rights should have been read. We therefore affirm the portion of the trial court's judgment suppressing the statement.

The second issue is whether the defendant's confession to Wilkerson should have been suppressed. The first question that must be resolved is whether the discussion between the defendant and Wilkerson was a direct product of the conversation between the defendant and Montesanto and thus must be suppressed as the "fruit of the poisonous tree." The defendant contends that the later statements were the direct consequence of the statement to Montesanto and must therefore be suppressed. We disagree.

It is well established that a prior inadmissible confession does not, in and of itself, render any later confession inadmissible. We believe that in the instant case, the defendant's confession to Wilkerson was not a direct consequence of his talk with Montesanto. It is clear that the defendant wished to confess. He tried to confess to Montesanto, but Montesanto told him to talk to the Bolingbrook police. The defendant specifically requested that he be able to talk to Wilkerson and Ranum, police officers with whom he had dealt before. The defendant thus clearly was willing to confess to Wilkerson and this confession had nothing to do with his statements to Montesanto.

■■ The defendant's reliance on *People v. Raddatz* (1968), 91 Ill. App. 2d 425, 235 N.E.2d 353, is misplaced. In *Raddatz*, the defendant was inter-

rogated and as a result of this interrogation, finally confessed. This occurred without the defendant having been given his *Miranda* rights. The defendant was then allowed to call his lawyer, who told him not to talk. The defendant was transferred to the State's Attorney's office, where he was read his *Miranda* rights. He then repeated his confession. The confession was suppressed as fruit of the prior confession. On appeal, the holding was affirmed. The court believed the defendant might have confessed the second time because he believed all was lost as a result of the first confession. The situation in *Raddatz* is markedly different from the instant case. In the instant case, the confession resulted from the defendant volunteering the information. He was clearly willing to repeat the confession to Wilkerson independent of his comments to Montesanto. Therefore, the confession to Wilkerson was not fruit of the poisonous tree and need not be suppressed on that basis.

The issue thus becomes whether or not the trial judge erred in finding that the statement was not voluntary because the defendant had been tricked into giving the statement by a false promise of leniency. We believe the trial judge's finding was contrary to the manifest weight of the evidence and accordingly reverse. The trial judge's opinion specifically stated that he did not believe the defendant's testimony except where it was corroborated by the police. The judge found that based on the detectives' testimony, there had been a promise of leniency which lured the defendant into confessing.

We believe the evidence established that there was no promise of leniency made or implied. Wilkerson testified that he had made no promises or deals with the defendant. The defendant signed a form attesting to the fact that no promise or deal had been made. On that tape the defendant stated that his statement was voluntary and that no deals or promises had been made.

The only testimony to rebut this evidence was the defendant's statements that he had received specific promises of probation and drug treatment from Wilkerson. When asked why he signed the form saying he had received no promises he said that Wilkerson had told him it would go better for him if he signed. However, the trial judge specifically found the defendant's testimony unreliable and stated his decision was based only on the detectives' testimony.

■■ The detectives' testimony is internally consistent in denying the making of any deals or promises. It is also corroborated by the defendant's taped statements denying any promises and his signing of the form saying no promises had been made. The defendant has had prior dealings with the police and is acquainted with police procedure. There is no evidence to suggest that the procedure of denying promises had been made when they had in fact been made was ever employed before. Due

to his familiarity with police procedure, the defendant surely would have been suspicious if told to do so in the instant case. We therefore believe no deals were made and the defendant's statements were voluntary. Accordingly, we reverse the trial court's judgment with respect to the confessions made to Wilkerson.

For the above mentioned reasons, the judgment of the circuit court of Will County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

BARRY, J., concurs.

Mr. JUSTICE HEIPLE, concurring and dissenting:

I agree that Levendoski's confession should not have been suppressed. I would also reverse the trial court's order which suppressed the statement defendant made to Detective Montesanto.

My disagreement stems from the majority's interpretation of what constitutes "interrogation" as announced in *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. My colleagues conclude the police interrogated Levendoski without affording him the procedural safeguards *Miranda* warnings are designed to promote. I do not think Levendoski was interrogated. Therefore, I do not believe a rendition of *Miranda* warnings was required.

Levendoski sought out a jailer and told him he wanted to talk to an officer. Detective Montesanto was called to the cellblock area. Defendant said he wanted to talk about an armed robbery. The police officer then asked what armed robbery, and defendant indicated a holdup of a fast-food restaurant. Montesanto said he needed more details. Levendoski confessed, indicating his participation in the offense and implicating two others. The conversation lasted 10 minutes.

Defendant's decision to speak with police is the very act he now claims violated his right to silence. He ignores the fact that he initiated that conversation. Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda v. Arizona* (1966), 384 U.S. 436, 444, 16 L. Ed. 2d 694, 706, 86 S. Ct. 1602, 1612.) The questioning complained of was the product of defendant's own voluntary act. Motivated for whatever reason, it was independent of any police conduct to elicit such a statement. Defendant was not subjugated to questioning which exploited the custodial setting. No psychological ploys (accord, *Brewer v. Williams* (1977), 430 U.S. 487, 51 L. Ed. 2d 424, 97 S. Ct. 1232) were used by the police to encroach upon Levendoski's right to remain silent, or compel him to talk. Nor in the

record is any reference that Officer Montesanto, by talking with Levendoski, did so with the design to make him admit his complicity in any armed robbery. (*Rhode Island v. Innis* (1980), 446 U.S. 291, 303 n.9, 64 L. Ed. 2d 297, 305-06 n.9, 100 S. Ct. 1682, 1690 n.9.) Clearly, before the conversation occurred, Montesanto had no indication whatsoever that Levendoski was involved in any armed robbery.

Every time the police talk to a prison inmate does not mean each such dialogue must be prefaced by *Miranda* warnings. Many conversations require it. This one does not. As *Miranda* notes:

> "Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk with the police without benefit of warnings and counsel but whether he can be interrogated." 384 U.S. 436, 478, 16 L. Ed. 2d 694, 726, 86 S. Ct. 1602, 1630.

Because I believe Levendoski was not interrogated, *Miranda* warnings were not required. Accordingly, I cannot concur with the affirmance which suppresses Levendoski's statement to Detective Montesanto. As to that portion of the majority's opinion, then, I respectfully dissent.